**GLOBAL LEGAL LAW FIRM**
Christopher R. Dryden, Esq. (SBN 234476)
cdryden@attorneygl.com
James C. Huber, Esq. (SBN 269488)
jhuber@attorneygl.com
Joshua J. Herndon, Esq. (SBN 244106)
jherndon@attorneygl.com
322 Encinitas Blvd., Suite 200
Encinitas, CA 92024
Tel.: (888) 846-8901
Facsimile:  (888) 846-8902

Attorneys for Plaintiff/Counter-Defendant/Counter
Claimant in Reply/Cross-Defendant BUSINESS
WARRIOR CORPORATION/ Counter-Claimant in
Reply BUSINESS WARRIOR CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BUSINESS WARRIOR CORPORATION, a Wyoming corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY LI, an individual, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 8:22−cv−02144−DOC−ADS<br><br>Judge:      Hon. David O. Carter<br><br>**JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM**<br><br>**[JURY TRIAL DEMANDED]** |
| TIMOTHY LI, an individual,<br><br>Counter-Claimant,<br><br>vs.<br><br>BUSINESS WARRIOR CORPORATION, a Wyoming corporation, and ROES 1 through 10, inclusive,<br><br>Counter- Defendants. | Complaint Filed:   November 28, 2022<br>Trial Date:   February 13, 2024 |
| BUSINESS WARRIOR CORPORATION, a Wyoming corporation,<br><br>Counter-Claimant,<br><br>vs.<br><br>TIMOTHY LI, an individual,<br><br>Counter-Defendants. | |

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

TIMOTHY LI, an individual, and, CONSTELLATION FINTECH HOLDINGS, LLC dba/Constellation Fintech Holding, a Delaware Corporation,

        Cross-Claimants,

    vs.

BUSINESS WARRIOR CORPORATION, a Wyoming corporation, JONATHAN BROOKS, an individual RHETT DOOLITTLE, an individual, and ROES 11 through 20,

Cross-Defendants.

BUSINESS WARRIOR CORPORATION, a Wyoming corporation, and ROES 11 through 20,

        Counter-Claimant in Reply,

    vs.

TIMOTHY LI, an individual, and, CONSTELLATION FINTECH HOLDINGS, LLC dba/Constellation Fintech Holding, a Delaware Corporation,

Cross-Defendants in Reply.

      Plaintiff/Cross-Defendant/Counter-Claimant in Reply Business Warrior Corporation ("BWC") and Cross-Defendants Jonathan Brooks ("Brooks") and Rhett Doolittle ("Doolittle") (collectively, the "BWC Parties"), for their Joint Answer and Affirmative Defenses state as follows with respect to Defendant/Cross-Claimant Timothy Li's and Cross-Claimant Constellation Fintech Holdings, LLC dba Constellation Fintech Holding, a Delaware Corporation's ("Constellation") (collectively, "Cross-Claimants") First Amended Crossclaim, [Dkt. No. 42], (the "FACC").

///

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

## IN ANSWER TO THE ALLEGATIONS IN THE CROSSCLAIM

1.      In answer to Paragraph 1 of the FACC, the BWC Parties admit each and every allegation contained in said paragraph.

2.      In answer to Paragraph 2 off the FACC, the BWC Parties admit that venue lies in the Central District of California pursuant to 28 U.S.C § 1391(b), (c), and/or (d). The BWC Parties deny that venue is proper under 28 U.S.C § 1400(b), since Cross-Claimants' FACC does not arise from a copyright, or other applicable basis, under the cited statute.

3.      In answer to Paragraph 3 of the FACC, the BWC Parties deny each and every allegation in said paragraph.

4.      In answer to Paragraph 4 of the FACC, the BWC Parties are without sufficient knowledge or information to form a belief as too the truth of the basis that Fluidfi was seeking funding to expand and allegations regarding Constellation's intent to sell Fluidfi.

5.      In answer to Paragraph 5 of the FACC, the BWC Parties deny each and every allegation in said paragraph.

6.      In answer to Paragraph 6 of the FACC, the BWC Parties deny each and every allegation in said paragraph.

7.      In answer to Paragraph 7 of the FACC, the BWC Parties admit that BWC was itself in the process of raising financing to expand. Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

8.      In answer to Paragraph 8 of the FACC, the BWC Parties admit that BWC was seeking funds to purchase Fluidfi. Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

9.      In answer to Paragraph 9 of the FACC, the BWC Parties admit that BWC proposed to Constellation, through Mr. Schmidt and Timothy Li, that BWC pay $2,000,000 in cash and give/issue to Constellation $5,000,000 worth of BWC "Series C Preferred Stock" (the "Stock"); and that BWC, through Doolittle and Brooks,

represented that BWC would pay an annual dividend on this Stock in the amount of 7% of the value of said Stock, or $350,000 per year starting on January 1, 2023(the "Dividend Payment"). Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

10.     In answer to Paragraph 10 of the FACC, the BWC Parties admit each and every allegation in said paragraph.

11.     In answer to Paragraph 11 of the FACC, the BWC Parties deny each and every paragraph contained therein.

12.     In answer to Paragraph 12 of the FACC, the BWC Parties admit each and every paragraph contained therein.

13.     In answer to Paragraph 13 of the FACC, the BWC Parties deny each and every paragraph contained therein.

14.     In answer to Paragraph 14 of the FACC, the BWC Parties admit that they represented that BWC was financially stable and had the ability to complete the Purchase Agreement and had sufficient cash on hand. Concerning assertions regarding the language of the parties' agreement, that document speaks for itself. The BWC Parties deny the remainder of the allegations in said paragraph.

15.     In answer to Paragraph 15 of the FACC, the BWC Parties deny each and every paragraph contained therein.

16.     In answer to Paragraph 16 of the FACC, the BWC Parties admit only to the extent that they did agree to assume liabilities of Fluidfi pertaining to the Utah lease, and that the BWC Parties entered into said agreement regarding the Utah lease in reliance on disinformation provided to the BWC Parties by Timothy Li and the fraud by misrepresentation and concealment by Constellation and Timothy Li. Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

17.     In answer to Paragraph 17 of the FACC, the BWC Parties deny each and every paragraph contained therein.

18.     In answer to Paragraph 18 of the FACC, the BWC Parties deny each and

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

every paragraph contained therein.

19.     In answer to Paragraph 19 of the FACC, the BWC Parties admit only to the extent that Cross-claimants in paragraph 19 incorporate the allegations from paragraphs 1 through 18.

20.     In answer to Paragraph 20 of the FACC, the BWC Parties are without sufficient knowledge or information to form a belief as to the truth of the basis that Fluidfi was seeking funding to expand and allegations regarding Constellation's intent to sell Fluidfi.

21.     In answer to Paragraph 21 of the FACC, the BWC Parties deny each and every paragraph contained therein.

22.     In answer to Paragraph 22 of the FACC, the BWC Parties admit the allegations contained in said paragraph.

23.     In answer to Paragraph 23 of the FACC, the BWC Parties are without sufficient knowledge or information to form a belief as to the allegations Fluidfi's intent to complete the process of raising equity however, BWC denies that, starting in March 2022, BWC started pushing and ramping up its efforts to purchase Fluidfi from Constellation. The BWC Parties deny the remainder of the allegations in said paragraph.

24.     In answer to Paragraph 24 of the FACC, the BWC Parties deny each and every paragraph contained therein.

25.     In answer to Paragraph 25 of the FACC, the BWC Parties deny each and every paragraph contained therein and, concerning assertions which reference the parties' agreement, that document speaks for itself.

26.     In answer to Paragraph 26 of the FACC, the BWC Parties deny each and every paragraph contained therein.

27.     In answer to Paragraph 27 of the FACC, the BWC Parties deny each and every paragraph contained therein.

28.     In answer to Paragraph 28 of the FACC, the BWC Parties admit each and every paragraph contained therein.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

29.     In answer to Paragraph 29 of the FACC, the BWC Parties deny each and every paragraph contained therein.

30.     In answer to Paragraph 30 of the FACC, the BWC Parties admit that they represented that BWC was financially stable and had the ability to complete the Purchase Agreement and had sufficient cash on hand. The BWC Parties deny the remainder of the allegations in said paragraph. To the extent portions of the paragraph reference the parties' agreement, that document speaks for itself.

31.     In answer to Paragraph 31 of the FACC, the BWC Parties deny each and every paragraph contained therein.

32.     In answer to Paragraph 32 of the FACC, the BWC Parties admit only to the extent that they did agree to assume liabilities of Fluidfi pertaining to the Utah lease, and that the BWC Parties entered into said agreement regarding the Utah lease in reliance on disinformation provided to the BWC Parties by Timothy Li and the fraud by misrepresentation and concealment by Constellation and Timothy Li. Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

33.     In answer to Paragraph 33 of the FACC, the BWC Parties deny each and every paragraph contained therein.

34.     In answer to Paragraph 34 of the FACC, the BWC Parties deny each and every paragraph contained therein.

35.     In answer to Paragraph 35 of the FACC, the BWC Parties deny each and every paragraph contained therein.

36.     In answer to Paragraph 36 of the FACC, the BWC Parties deny each and every paragraph contained therein.

37.     In answer to Paragraph 37 of the FACC, the BWC Parties deny each and every paragraph contained therein.

38.     In answer to Paragraph 38 of the FACC, the BWC Parties deny each and every paragraph contained therein.

39.     In answer to Paragraph 39 of the FACC, the BWC Parties deny each and

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

1  every paragraph contained therein.

2       40.     In answer to Paragraph 40 of the FACC, the BWC Parties deny each and

3  every paragraph contained therein.

4       41.     In answer to Paragraph 41 of the FACC, the BWC Parties deny each and

5  every paragraph contained therein.

6       42.     In answer to Paragraph 42 of the FACC, the BWC Parties admit only to

7  form and to the extent that Cross-claimants in paragraph 42 incorporate the allegations

8  from paragraphs 1 through 41.

9       43.     In answer to Paragraph 43 of the FACC, the BWC Parties are without

10 sufficient knowledge or information to form a belief as too the truth of the allegations

11 in this paragraph.

12      44.     In answer to Paragraph 44 of the FACC, the BWC Parties deny each and

13 every paragraph contained therein.

14      45.     In answer to Paragraph 45 of the FACC, the BWC Parties admit the

15 allegations contained in said paragraph.

16      46.     In answer to Paragraph 46 of the FACC, the BWC Parties admit that

17 BWC was itself in the process of raising financing to expand. Except as so admitted,

18 the BWC Parties deny the remainder of the allegations in said paragraph.

19      47.     In answer to Paragraph 47 of the FACC, the BWC Parties admit that

20 BWC was seeking funds to purchase Fluidfi. Except as so admitted, the BWC Parties

21 deny the remainder of the allegations in said paragraph.

22      48.     In answer to Paragraph 48 of the FACC, the BWC Parties admit to the

23 extent that BWC proposed to Constellation, through Mr. Schmidt and Timothy Li, that

24 BWC pay $2,000,000 in cash and give/issue to Constellation $5,000,000 worth of

25 BWC "Series C Preferred Stock" (the "Stock"); and that BWC, through Doolittle and

26 Brooks, represented that BWC would pay an annual dividend on this Stock in the

27 amount of 7% of the value of said Stock, or $350,000 per year starting on January 1,

28 2023(the "Dividend Payment"). Except as so admitted, the BWC Parties deny each

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

7

and every allegation in said paragraph.

49. In answer to Paragraph 49 of the FACC, the BWC Parties admit the allegations contained in said paragraph except those concerning Fluidfi's motivations for seeking funding, which the BWC Parties lack sufficient information from which to formulate a response.

50. In answer to Paragraph 50 of the FACC, the BWC Parties deny each and every paragraph contained therein.

51. In answer to Paragraph 51 of the FACC, the BWC Parties admit each and every paragraph contained therein.

52. In answer to Paragraph 52 of the FACC, the BWC Parties deny each and every paragraph contained therein.

53. In answer to Paragraph 53 of the FACC, the BWC Parties admit that they represented that BWC was financially stable and had the ability to complete the Purchase Agreement and had sufficient cash on hand. The BWC Parties deny the remainder of the allegations in said paragraph. To the extent portions of the paragraph reference the parties' agreement, that document speaks for itself.

54. In answer to Paragraph 54 of the FACC, the BWC Parties deny each and every paragraph contained therein.

55. In answer to Paragraph 55 of the FACC, the BWC Parties admit only to the extent that they did agree to assume liabilities of Fluidfi pertaining to the Utah lease, and that the BWC Parties entered into said agreement regarding the Utah lease in reliance on disinformation provided to the BWC Parties by Timothy Li and the fraud by misrepresentation and concealment by Constellation and Timothy Li. Except as so admitted, the BWC Parties deny the remainder of the allegations in said paragraph.

56. In answer to Paragraph 56 of the FACC, the BWC Parties deny each and every paragraph contained therein.

57. In answer to Paragraph 57 of the FACC, the BWC Parties deny each and every paragraph contained therein.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

58.     In answer to Paragraph 58 of the FACC, the BWC Parties deny each and every paragraph contained therein.

59.     In answer to Paragraph 59 of the FACC, the BWC Parties deny each and every paragraph contained therein.

60.     In answer to Paragraph 60 of the FACC, the BWC Parties deny each and every paragraph contained therein.

61.     In answer to Paragraph 61 of the FACC, the BWC Parties deny each and every paragraph contained therein.

62.     In answer to Paragraph 62 of the FACC, the BWC Parties deny each and every paragraph contained therein.

63.     In answer to Paragraph 63 of the FACC, the BWC Parties deny each and every paragraph contained therein.

64.     In answer to Paragraph 64 of the FACC, the BWC Parties deny each and every paragraph contained therein.

65.     Admit only to form and to the extent that Cross-claimants in paragraph 65 incorporate the allegations from paragraphs 1 through 64.

66.     In answer to Paragraph 66 of the FACC, the BWC Parties admit each and every paragraph contained therein.

67.     In answer to Paragraph 67 of the FACC, the BWC Parties deny each and every paragraph contained therein.

68.     In answer to Paragraph 68 of the FACC, the BWC Parties deny each and every paragraph contained therein.

69.     In answer to Paragraph 69 of the FACC, the BWC Parties deny each and every paragraph contained therein.

70.     In answer to Paragraph 70 of the FACC, the BWC Parties deny each and every paragraph contained therein.

71.     In answer to Paragraph 71 of the FACC, the BWC Parties deny each and every paragraph contained therein.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-9901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

**AFFIRMATIVE DEFENSES**

1.      The Crossclaim is barred by the doctrine of unclean hands as detailed in the counterclaim asserted herewith.

2.      The Crossclaim is barred by the doctrine of laches because Constellation and Timothy Li have delayed in asserting their purported rights under the Merger Agreement.

3.      The Crossclaim fails because Timothy Li and Constellation did not suffer any damages and their damages are trivial and/or speculative.

4.      The Crossclaim fails under the mitigation doctrine because Timothy Li and Constellation failed to act reasonably to mitigate their purported injuries.

5.      The Crossclaim is barred by the avoidable consequences doctrine.

6.      As to both Timothy Li and Constellation, the Crossclaim is barred by the doctrine of waiver.

7.      The Crossclaim is barred by the doctrine of estoppel.

8.      The Crossclaim fails because Timothy Li would be unjustly enriched if he were to recover the sums alleged due to Timothy Li's fraud/deceit upon the BWC Parties relating to the Utah lease and his intentions not to carry out the terms of both the Purchase Agreement and the Executive Employment Agreement in good faith. What's more, Timothy Li, without justification or excuse, embezzled $200,000.00 from BWC. If Timothy Li has not already been unjustly enriched due to his embezzlement, he certainly would be if the Court were to sanction such misconduct.

9.      The Crossclaim fails because Timothy Li prevented performance by the BWC Parties.

10.      The Crossclaim is barred by excuse of performance because Timothy Li failed to perform a condition precedent thereby excusing the BWC Parties from further performance.

11.      The Crossclaim is barred by the doctrine of acquiescence resulting from Timothy Li's and Constellation's silence and passiveness over an extended period of

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

time pertaining to the Utah lease and other elements of the merger agreement as detailed in the attached counterclaim.

12.     The Crossclaim fails because the damage sustained was by superseding and intervening acts.

13.     The Crossclaim fails because the equities do not preponderate in favor of Timothy Li and Constellation because Timothy Li defrauded and committed unlawful acts of theft toward the BWC Parties.

14.     The Crossclaim fails because Timothy Li engaged in illegal and unlawful conduct by way of his criminal acts of theft toward the BWC Parties.

15.     The Crossclaim is barred by the doctrine of In Pari Delicto because Timothy Li and Constellation are equally responsible for the harmful conduct.

16.     The Crossclaim is barred because the BWC Parties had fully performed under both the agreements and in full satisfaction of their respective obligations thereunder.

17.     The Crossclaim fails because Timothy Li committed the first material breach.

18.     The BWC Parties reserve the right to amend and supplement their affirmative defenses.

## COUNTERCLAIM IN REPLY TO CROSS-CLAIM FOR DAMAGES

Plaintiff/Counterclaim Defendant/Counterclaimant in Reply/Cross-Claim Defendant/Counterclaimant in Reply to Cross-Claim Business Warrior Corporation ("BWC"), by and through its undersigned counsel, as and for its Counterclaim in Reply to Cross Claim against Constellation Fintech Holdings, LLC ("Constellation") and Timothy Li (with Constellation and BWC collectively referred to herein as the "Parties"), alleges as follows:

## NATURE OF THE CLAIM

1.     Through this Counterclaim in Reply to Cross-Claim, BWC respectfully requests that the Court find that Constellation breached the Parties' written contract

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

titled "Agreement and Plan of Reorganization by and Among Business Warrior Corporation ("Parent"), BZ Merger Sub ("Merger Sub"), and Fluidfi Inc. D/B/A Alchemy Technologies ("Company"), Constellation Fintech Holdings LLC ("Company Stockholder"), and Timothy Li ("Company Stockholder's Representative")." This agreement was entered on June 8, 2022, a true and correct copy of which is attached hereto and incorporated herein as if set forth fully at length, is labeled as **Exhibit 1** and referred to herein as the "Agreement." As detailed below, Constellation breached the Agreement for myriad reasons, including relating to its representations (and/or its concealment), warranties, and disclosures made thereunder. Additionally, BWC requests that the Court find that Constellation engaged in promissory fraud relating to the Agreement as detailed below. BWC further requests that Constellation indemnify BWC as detailed hereinbelow. The transaction between BWC and Constellation which is memorialized by the Agreement is referred to hereafter as the "Merger."

2. Prior to the execution of the Agreement, Constellation, through the acts and concealment of Timothy Li, engaged in deliberate actions designed to artificially inflate the value of Fluidfi Inc. (hereafter referred to as "Alchemy") to induce BWC to make an offer for Alchemy's purchase. During the due diligence period and prior to entering the Agreement, Constellation (a) misrepresented Alchemy's historical and anticipated future revenues, accounts receivable and operating costs and (b) concealed from BWC (i) material relationships and inherent conflicts which would foreseeably arise following BWC's purchase of Alchemy and Constellation's terminated ownership interest in Alchemy and (ii) Constellation's failure to secure Alchemy's intellectual property (hereafter, its "IP") from being placed at substantial risk, which later caused significant damage to BWC once these risks materialized into the theft and misappropriation of the IP by third parties as sanctioned by Constellation, its owners and affiliated entities, and pre-Merger software development subcontractors. Constellation's breaches of the Agreement as further described herein are numerous and have caused millions of dollars in damages to BWC. Due to the acts and concealment

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

described herein, Alchemy was worth a fraction of the value of the money BWC paid to acquire it. Alchemy lost additional value due to its IP becoming imperiled and devalued, and due to resources expended to mitigate and fix BWC's damages caused by Timothy Li's and Constellation's, and each of them, transgressions.

3.     Additionally, as set forth in greater detail below, Timothy Li and Constellation knew that its representations to BWC were false prior to the acquisition. Timothy Li and Constellation also knew that the matters that it concealed were material to the transaction. Timothy Li and Constellation concealed and misrepresented material facts for the purpose of inducing BWC to participate in the transaction. BWC justifiably relied upon Timothy Li's and Constellation's concealment and misrepresentations of material facts. And, finally, BWC suffered significant economic damage as a direct result of Timothy Li's and Constellation's concealments and misrepresentations of material facts that related to the transaction.

## THE PARTIES

4.     BWC is a Wyoming corporation with its principal place of business in Las Vegas, Nevada. BWC purchased Alchemy from Constellation.

5.     Constellation is a Delaware limited liability company with its principal place of business in Irvine, California. Constellation was formerly the sole interest holder in Alchemy.

6.     Respondent Timothy Li is an individual residing in Orange, California. Prior to entering into the Agreement, Timothy Li was the managing member and majority interest holder in Constellation. Timothy Li also acted as Alchemy's Chief Executive Officer ("CEO").

7.     Alchemy is a Delaware corporation. Alchemy was purchased by BWC on June 8, 2022, and now operates as a wholly-owned subsidiary of BWC.

## JURISDICTION

8.     Personal jurisdiction is present over Timothy Li and Constellation because Timothy Li is a citizen of California, and Constellation is a citizen of both

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

California and Texas. Furthermore, Timothy Li and Constellation consented to this Court's jurisdiction by filing the First Amended Crossclaim. [Dkt. No. 42].

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Timothy Li resides in California, and Constellation resides in both California and Texas, while BWC resides in Nevada, and the amount in controversy exceeds $75,000.

10.    Venue is proper in this Court pursuant to U.S.C. § 1391(b) because Timothy Li and Constellation both are residents of the State of California, County of Orange, and a substantial part of the events or omissions giving rise to BWC's claims occurred within this district including without limitation organization of actions giving rise to theft and embezzlement, including the coordination of actions by communications arising from or being sent into this judicial district, and BWC suffered substantial harm within this judicial district as a result of Timothy Li's and Constellation's misconduct as detailed below.

## **FACTUAL ALLEGATIONS**

### **Constellation Seeks Investment in Alchemy from its Client, BWC.**

11.    In 2021, BWC became a client of Alchemy. At that time, Constellation wholly owned Alchemy and Timothy Li and his wife Vy Li owned 47.61 and 9.43%, respectively, of Constellation.

12.    In February 2022, Randy Schmidt, at the time Chief Operating Officer ("COO") of Alchemy, and Jason Doolittle of BWC discussed the possibility of BWC making an investment into Alchemy.

13.    On or around March 24, 2022, Constellation and Timothy Li gave a presentation on behalf of Alchemy to BWC's President, Jonathan Brooks and BWC'S CEO, Rhett Doolittle.  (the "Presentation").

14.    During this presentation, Constellation and Timothy Li presented a "Pitch Deck" of investment-related slides illustrating aspects of Alchemy's operations, revenue, business model, and personnel. Constellation and Timothy Li made it clear throughout the Presentation that the purpose of the Presentation was to obtain a capital

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

1  investment or purchaser for Alchemy. Following this Presentation, BWC developed
2  an interest in this opportunity to invest in Alchemy and/or to purchase the company.

### BWC Reviews Preliminary Financials and Negotiations to Purchase Alchemy Commence.

5      15.     Following the Presentation, Constellation provided BWC with
6  preliminary due diligence documents for BWC's review and consideration. The
7  documents essentially consisted of Alchemy's pro forma financials, a spreadsheet of
8  Alchemy's revenue, as well as some of the basic details of Alchemy's customer
9  contracts.

10     16.     After reviewing these documents, BWC prepared an offer to purchase
11 Alchemy from Constellation – memorialized by a "Term Sheet" that BWC provided
12 to Constellation on April 15, 2022. This Term Sheet established the basic framework
13 for what would ultimately become BWC's acquisition of Alchemy.

14     17.     Included in this Term Sheet were requirements for Constellation to keep
15 the Parties' dealings confidential and for BWC to maintain exclusive purchasing rights
16 of Alchemy until the end of June 2022. As detailed below, BWC eventually discovered
17 that Constellation violated both the confidentiality and the exclusivity provisions of
18 this Term Sheet.

19     18.     Timothy Li signed the Term Sheet on Constellation's behalf on May 2, 2022.

20     19.     Following the execution of the Term Sheet, Constellation provided
21 additional due diligence documents to BWC. After BWC's review of all due diligence
22 documents, the Parties negotiated the Agreement for BWC to acquire Alchemy from
23 Constellation.

### The Parties Enter the Agreement and Alchemy Merges into BWC.

25     20.     On June 7, 2022, the Parties entered into the Agreement (see Exhibit 1).

26     21.     In essence, the deal provided that (1) BWC would acquire Alchemy from
27 Constellation, (2) Alchemy would merge with a subsidiary of BWC referred to as the
28 BZ Merger Sub , and (3) Alchemy would survive the merger to become a wholly

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

owned subsidiary of BWC, while BZ Merger Sub would cease to exist. This transaction and its mechanics make up the Merger.

22.    Throughout the Agreement, "Parent" refers to BWC; "Merger Sub" refers to BZ Merger Sub; "Company" refers to Alchemy; "Company Stockholder" refers to Constellation; "Company Stockholder's Representative" refers to Timothy Li; and each is a "Party" and collectively are the "Parties."

23.    Certain relevant portions of the Agreement are detailed in the following paragraphs. All capitalized terms that are not defined herein are defined within the Agreement.

24.    Constellation's board of directors unanimously approved the Merger and Agreement. (Ex. 1, Page 1, Recitals, Paragraphs 1-2).

25.    BWC and Constellation "desire(d) to make certain representations, warranties, covenants and agreements in connection with the Merger and also to prescribe various conditions to the Merger." (Ex. 1, Page 1, Recitals, Paragraph 3).

26.    The parties to the Agreement agreed that all conditions of Article VII ("Conditions to the Consummation of the Merger") had been met, including: "Accuracy of Representations and Warranties. Each of the representations and warranties of (Alchemy) set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though made on and as of that date; provided, that any such representation and warranty that is specifically made as of a particular date shall be true and correct in all material respects as of such specified date, except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect." (Ex. 1, Article VII, § 7.2(a)).

27.    Article IV of the Agreement sets forth Alchemy's warranties and representations requirements. Alchemy and Constellation made representations and warranties to BWC concerning Alchemy's financial statements and liabilities as follows:

A.    (Alchemy) has previously delivered to (BWC) true and complete copies of its: (a) unaudited balance sheets and statements of income, retained earnings

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

and cash flows as of and for its fiscal years ended December 31, 2020 and 2021, including all applicable footnotes; and (b) unaudited interim balance sheets and statements of income, retained earnings and cash flows as of and for the three (3)-month period ended March 31, 2022 (the "Current Financial Statements" and, together with the items described in clause (a) above, the "Financial Statements"). The Financial Statements present fairly in all material respects the financial condition of (Alchemy) as at the end of the covered periods and the results of its operations and its cash flows for the covered periods. The Financial Statements were prepared in accordance with GAAP, applied on a consistent basis throughout the covered periods, subject, in all material respects, in the case of the Current Financial Statements, to year-end audit adjustments (which will not, in the aggregate, be material, except as disclosed on Section 4.6(a) of the Disclosure Schedule) and the lack of footnotes and other presentation items. (Ex. 1, Article IV, § 4.6(a)).

B.      Except as set forth on Section 4.6 (b) of the Disclosure Schedule, to the Knowledge of (Alchemy), there is no material liability, debt, or legally binding commitment or obligation of any nature whatsoever, whether accrued or fixed, absolute or contingent, matured or unmatured or determined or determinable or otherwise (any such liability, debt or legally binding commitment or obligation, a "Liability") of the nature required to be disclosed in a balance sheet prepared in accordance with GAAP, against (Alchemy) or any of its Subsidiaries, and whether or not required to be disclosed, or any other fact or circumstance that would reasonably be likely to result in any material claims against, or any obligations or liabilities of, (Alchemy) or any of its Subsidiaries, except for liabilities and obligations (a) reflected or reserved for on (Alchemy) Financial Statements or disclosed in the notes thereto, (b) that have arisen since the date of the most recent balance sheet included in (Alchemy) Financial Statements in the ordinary course of the operation of business of (Alchemy) and its Subsidiaries, or (c) under any Material Contract set forth on Section 4.16 of the Disclosure Schedule or not required to be disclosed in the schedules (other

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

17

than any such liability, debt or obligation resulting from a breach or a default thereunder). (Ex. 1, Article IV, § 4.6(b)).

28.     Alchemy represented that "…(s)ince March 31, 2022, through the date of this Agreement, to the Knowledge of (Alchemy), (a) there has not been a Material Adverse Effect to (Alchemy's) knowledge, and (b) (Alchemy) has conducted their respective businesses in the ordinary course of business in all material respects consistent with past practice, except for actions taken in respect of this Agreement." (Ex. 1, Article IV, § 4.7).

29.     Regarding the IP, Alchemy represented and warranted in Section 4.14 titled "Intellectual Property":

A.     (Alchemy) owns, or is licensed or otherwise has the right to use (in each case, without payments to third parties and free and clear of any Liens), all Intellectual Property necessary for or material to the conduct of its business as currently conducted and such rights are not subject to termination by any third party. Section 4.14(a) of the Disclosure Schedule sets forth a true and complete list of all issued patents, registered trademarks, registered trade names, registered service marks, registered copyrights and in each case applications therefor, and domain names and applications therefor, if any, owned by or licensed to (Alchemy) as of the date of this Agreement. All issued patents, patent applications, registered trademarks, trade names and service marks and, in each case, applications therefor, registered copyrights and applications therefor and domain names and applications therefor owned by (Alchemy) or any of its Subsidiaries have been duly registered and/or filed, as applicable, with or issued by each applicable Governmental Authority in each applicable jurisdiction, all necessary affidavits of continuing use have been filed, and all necessary maintenance fees that are due have been paid to continue all such rights in effect. (Alchemy) has made available to (BWC) complete and correct copies of, and Section 4.14(a) of the Disclosure Schedule sets forth as of the date hereof a true and complete list of, all license agreements relating to Intellectual Property to or by which

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

(Alchemy) is a party or bound;

B.     To the Knowledge of (Alchemy), (Alchemy) or any of its or their products or services has not infringed upon or otherwise violated, or is infringing upon or otherwise violating, the Intellectual Property rights of any Person. There is no suit, claim, action, investigation or proceeding pending or, to the Knowledge of (Alchemy), threatened with respect to, and (Alchemy) has not been notified in writing of, any possible infringement or other violation by (Alchemy) or their products or services of the Intellectual Property rights of any Person and, to the Knowledge of (Alchemy), there is no valid basis for any such claim. There is no investigation pending or, to the Knowledge of (Alchemy), threatened with respect to any material infringement or other violation by (Alchemy) or any of its or their products or services of the Intellectual Property rights of any Person;

C.     To the Knowledge of (Alchemy), no Person nor any product or service of any Person is infringing upon or otherwise violating any Intellectual Property rights of (Alchemy);

D.     To the Knowledge of (Alchemy), the execution and delivery of this Agreement, the consummation of the Merger and the other transactions contemplated by this Agreement and the compliance with the provisions of this Agreement do not and will not conflict with, or result in any violation of or default (with or without notice or lapse of time or both) under, or give rise to any right, license or encumbrance relating to, any Intellectual Property owned or used by (Alchemy) or with respect to which (Alchemy) now has or has had any agreement with any third party, or any right of termination, cancellation or acceleration of any Intellectual Property right or obligation set forth in any agreement to or by which (Alchemy) is a party or bound, or the loss or encumbrance of any Intellectual Property or material benefit related thereto, or result in the creation of any Lien in or upon any Intellectual Property or right.

E.     To the Knowledge of (Alchemy), (Alchemy) has taken reasonable measures to maintain the confidentiality of their Intellectual Property and every Person

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

employed by (Alchemy) in all material respects, including agents, consultants and independent contractors, who has or had or may in the future have access to confidential or proprietary information has entered into a confidentiality and nondisclosure agreement with (Alchemy). (Alchemy) has provided (BWC) with copies of all forms of confidentiality and nondisclosure agreement used by (Alchemy).

F.      To the Knowledge of (Alchemy), each of the former or current members of management or key Personnel of (Alchemy), including all former and current employees, agents, consultants and independent contractors who have contributed to or participated in the conception and development of Intellectual Property owned, intended to be owned or used by (Alchemy), have assigned or otherwise transferred to (Alchemy) all ownership and other rights of any nature whatsoever (to the extent permitted by Law) of such Person in any Intellectual Property owned, intended to be owned or used by (Alchemy) in all material respects. To the Knowledge of (Alchemy), none of the former or current members of management or key Personnel of (Alchemy), including all former and current employees, agents, consultants and independent contractors who have contributed to or participated in the conception and development of Intellectual Property owned, intended to be owned or used by (Alchemy), have a valid claim against (Alchemy) in connection with the involvement of such Persons in the conception and development of any Intellectual Property owned, intended to be owned or used by (Alchemy), and no such claim has been asserted or, to the Knowledge of (Alchemy), threatened. To the Knowledge of (Alchemy), none of the current employees of (Alchemy) has any patents issued or applications pending for any device, process, design or invention of any kind now used or needed by (Alchemy) in furtherance of their business as currently conducted, which patents or applications have not been assigned to (Alchemy). (Ex 1, Article IV, § 4.14).

30.     Regarding privacy and data security, Alchemy represented and warranted in Section 4.24 titled "Privacy and Data Security":

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

"…(c) To the Knowledge of the (Alchemy),

…

(1) Each of (Alchemy) and its Subsidiaries has implemented Privacy and Data Security Policies that are no less rigorous than industry best practices.

…

(4) (Alchemy) and its Subsidiaries have made available a true, correct, and complete copy of each Privacy and Data Security Policy in effect at any time since the respective inceptions of (Alchemy) and its Subsidiaries.

(5) At all times, each of (Alchemy) and its Subsidiaries has been and is in compliance with all of its Privacy and Data Security Policies.

…

(j) To the Knowledge of (Alchemy),

(1) Each of (Alchemy) and its Subsidiaries has established administrative safeguards that set forth the specific individuals who can access (Alchemy's) internal network and systems, including its software and hardware.

(2) Each of (Alchemy) and its Subsidiaries has implemented a password protection process for its internal network and systems that utilizes strong, complex passwords that are routinely changed and are combined with one or more verification methods to create a multi-factor authentication system.

(3) Each of (Alchemy) and its Subsidiaries has utilized data encryption methods that are no less rigorous than industry best practices to secure its network and systems from unauthorized access, including encryption of Personal Data and any other non-public information stored on mobile media or transmitted over any public networks or wireless networks.

(k) To the Knowledge of (Alchemy),

(1) Each of (Alchemy) and its Subsidiaries has adopted in the ordinary conduct of its business, policies, procedures and risk management processes

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

to ensure the physical security of its facilities and computing environments, and that are no less rigorous than industry best practices and applicable Privacy Laws.

(2) Each of (Alchemy) and its Subsidiaries has secured and maintained control of all physical access points, maintained effective identification procedures, ensured visibility in all high-risk areas, and has adopted policies that ensure the adequate treatment of sensitive information in public space, including, without limitation, restrictions relating to the use of monitors in open areas, keeping laptops and other retrievable items out of accessible spaces, printing in secure areas, effective mail center screening and distribution procedures and secure trash and electronic equipment disposal methods.

(l) Each of (Alchemy) and its Subsidiaries has adopted policies to identify Personal Data or any other non-public information that are subject to a system backup, and to specify the frequency of such backups. Each of (Alchemy) and its Subsidiaries has backed up its sensitive information using secure data backup storage systems and has limited access to the backed-up information to only such authorized persons or employees who are identified in its respective policies as having the authority to access such backed-up information.

(m) The products or service offerings of each of (Alchemy) and its Subsidiaries contain mechanisms such as firewall, antivirus protection, web filtering or other functions that are no less rigorous than industry best practices to lower the risk of infection from viruses or malicious routines and codes that can destroy, modify or diminish, or cause a similar effect on, its respective products or services, including its programs, equipment and devices, any part of its internal networks or systems, Personal Data or any other non-public information. The products or service offerings contain no disabling code, "time bombs," time-out or deactivation functions that may terminate operations, diminish the product or services, or result in them performing in an impaired manner. The products or service offerings are free of any "viruses" including, but not limited to, "trojan horses" or "worms" that may destroy or corrupt

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

data, and the products or service offerings do not contain any unknown code, scripts or tags, or "back doors" that could enable unauthorized access.

(n) Section 4.24(n) of the Disclosure Schedule sets forth as of the date hereof a true and complete list of all audits or checks that each of (Alchemy) and its Subsidiaries, or any third party on behalf of any of them, has performed in the prior five (5) years in connection with Alchemy's security control, any individuals or parties who conducted the audits, and results of any such audits. Each of (Alchemy) and its Subsidiaries, in the ordinary conduct of its business, has performed regular audits of its information security controls, system and procedures that are no less rigorous than industry best practices to assess its compliance with its Privacy and Data Security Policies, and has provided Parent with complete and accurate records of the audit results. (Ex. 1, Article IV, §§ 4.24(j) through (n)).

31.     BWC would enter into employment agreements with key Alchemy employees as part of the Merger/Agreement, including an agreement with Timothy Li. (Ex. 1, Article VI, § 6.3).

32.     Alchemy was required to notify BWC of certain matters, including: any inaccuracy of any representation or warranty contained in the Agreement or any failure to comply with any covenant to be complied with under the Agreement such that the conditions set forth in Article VII of the Agreement would not be satisfied; and the failure of the Company to perform in any material respect any obligation to be performed by it under this Agreement. (Ex. 1, §§ 6.11(a) and (b)).

33.     Article VII contained conditions to the consummation of the Merger.

34.     Prior to BWC's obligations consummating, Alchemy was required to meet certain conditions, as follows: "Conditions to Obligations of (BWC). The obligation of (BWC) to consummate the Merger is also subject to the satisfaction (or waiver by (BWC)) if permitted under applicable Law) at or prior to the Effective Time of the following conditions:

///

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-9901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

A.   <u>Accuracy of Representations and Warranties.</u> Each of the representations and warranties of (Alchemy) set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though made on and as of that date; provided, that any such representation and warranty that is specifically made as of a particular date shall be true and correct in all material respects as of such specified date, except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect.

B.   <u>Performance and Compliance of (Alchemy).</u> (Alchemy) shall have performed or complied in all material respects with each of the obligations required to be performed or complied with by it under this Agreement at or prior to the Effective Time; and (BWC) shall have received a certificate signed on behalf of (Alchemy) by the Chief Executive Officer and the Chief Financial Officer of (Alchemy) to such effect.

C.   <u>Consents and Approvals.</u> (Alchemy) shall have obtained or granted each consent, authorization, approval, exemption, filing, registration or qualification required to be obtained or granted by it in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement.

D.   <u>No Material Adverse Effect.</u> Since the date of this Agreement, (Alchemy) shall not have occurred a Material Adverse Effect.

E.   <u>Officer's Certificate.</u> (Alchemy) shall have delivered to (BWC) a certificate signed on behalf of (Alchemy) by the President of (Alchemy), dated the Closing Date and certifying that each of the conditions specified in subsections Section 7.2(a), Section 7.2(b), Section 7.2(c), and Section 7.2(d) of this Section 7.2 have been met." (Ex. 1, Article VII, § 7.2).

35.   Article VIII of the Agreement set forth indemnification and other requirements under the Agreement, including:

A.   <u>Section 8.1 Survival.</u> (a) All representations and warranties made in this Agreement shall survive the Closing until the second anniversary of the Closing

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

Date, other than (i) the representations and warranties made by (Alchemy) and (Alchemy) Stockholder set forth in Section 4.1 (Organization; Corporate Power; Corporate Records), Section 4.2 (Capitalization), Section 4.3 (Subsidiaries), Section 4.4 (Corporate Authorization), Section 4.5 (Non-Contravention; Filings and Consents), Section 4.19 (Brokers; Certain Expenses), and representations and warranties made by the (BWC) and Merger Sub set forth in Section 5.1 (Organization; Corporate Power; Corporate Records), and Section 5.2 (Capitalization), Section 5.3 (Corporate Authorization), Section 5.4 (Non-Contravention; Filings and Consents), Section 5.14 (Brokers; Certain Expenses) (the representations and warranties referred to in the foregoing clause, collectively, the "Fundamental Representations"), which shall survive for the applicable statute of limitations plus sixty (60) days, and (ii) the representations and warranties made by (Alchemy) and (Alchemy) Stockholder set forth in Section 4.8 (Employee Benefit Plans), Section 4.11 (Tax Matters), Section 4.13 (Environmental Matters), Section 4.14 (Intellectual Property), and the representations and warranties made by the (BWC) and Merger Sub set forth in Section 5.7 ((BWC) Employee Benefit Plans) and Section 5.10 (Tax Matters) which shall survive until sixty (60) days following the expiration of the applicable statute of limitations. Each of the covenants and agreements made in this Agreement to be performed prior to the Closing shall survive the Closing for a period of eighteen (18) months following the Closing Date, and each of the covenants and agreement made in this Agreement to be performed following the Closing shall survive the Closing until they are fully performed or terminate in accordance with their respective terms.  (Ex. 1, Article VIII, § 8.1).

        B.    Section 8.2 Indemnification by (Alchemy) Stockholder. From and after the Closing, (Constellation) shall defend, indemnify and hold harmless (BWC) and (Alchemy) and their respective directors, officers, employees and agents (each a "(BWC) Indemnified Party") from and against any and all liabilities, obligations, claims, contingencies, Taxes, fines, deficiencies, demands, assessments, losses

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

(including diminution in value), damages (including incidental and consequential damages), costs and expenses, including, without limitation, all corrective and remedial actions, all court costs and reasonable attorneys' fees, and all reasonable amounts paid in investigation, defense, or settlement of the foregoing) (collectively, "Losses") that constitute, or arise out of or in connection with:

(a) any material misrepresentation or breach of warranty under Article IV (a "Seller Warranty Breach");

(b) any default by (Constellation) or (Alchemy) in the performance or observance of any of their covenants or agreements under this Agreement; or

(c) any liability (each, an "Excluded Liability") set forth on Section 4.6    (b) of the Disclosure Schedule.   (Ex. 1, Article VIII, § 8.2).

36.    Article X of the Agreement set forth miscellaneous provisions of the Agreement, including:

A.    The Agreement is subject to choice of law and compulsory forum designation clauses:

1.    "Section 10.6 Governing Law. This Agreement, and any dispute arising out of, relating to, or in connection with this Agreement, shall be governed by and construed in accordance with the Laws of the State of Delaware, without giving effect to any choice or conflict of Law provision or rule (whether of the State of Delaware or of any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware." (Ex. 1, § 10.6).

B.    Section 10.7 Enforcement of the Agreement; Jurisdiction; No Jury Trial. (a) The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement exclusively in the Delaware Court of Chancery, or in the event (but only

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the District of Delaware or another court sitting in the state of Delaware, this being in addition to any other remedy to which they are entitled at law or in equity. In addition, each of the Parties irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising under this Agreement, or for recognition and enforcement of any judgment in respect of this Agreement and the rights and obligations arising under this Agreement brought by the other Party to this Agreement or its successors or assigns shall be brought and determined exclusively in the Delaware Court of Chancery, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the District of Delaware or another court sitting in the state of Delaware. Each of the Parties hereby irrevocably submits with regard to any such action or proceeding for itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the aforesaid courts and agrees that it will not bring any Action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the aforesaid courts. Each of the Parties hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any Action or proceeding with respect to this Agreement, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason other than the failure to serve in accordance with this Section 10.7; (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise); and (c) to the fullest extent permitted by the applicable Law, any claim that (i) the suit, action or proceeding in such court is brought in an inconvenient forum; (ii) the venue of such suit, action or proceeding is improper; or (iii) this Agreement, or the subject matter of this Agreement, may not be enforced in or by such courts. Each

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

of the (Alchemy and BWC) hereby agrees that service of any process, summons, notice or document by U.S. registered mail to the respective addresses set forth in Section 10.8 shall be effective service of process for any proceeding arising out of, relating to or in connection with this Agreement or the transactions contemplated hereby, including the Merger.

C. EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR OTHER PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (III) EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.7(B).  (Ex. 1, Article X, § 10.7).

**Constellation's Misrepresentations and Concealment
Come to Light Following the Merger.**

37.    Following the Merger, BWC discovered that Timothy Li and Constellation, and each of them, had made significant misrepresentations and had concealed material facts, as detailed further below.

**The Pitch Deck/Investment Presentation.**

38.    After the Merger, BWC realized that the Pitch Deck used by Timothy Li

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

and Constellation throughout the Presentation contained numerous misrepresentations. Specifically, Timothy Li and Constellation attempted to induce BWC into making an offer to purchase Alchemy by making Alchemy appear more profitable by lying about its finances as follows:

A. **Software as a Service ("SaaS") Revenue**: Timothy Li and Constellation lied about the monthly SaaS revenue projections. Timothy Li and Constellation represented that Alchemy's monthly SaaS revenues were $120,000 when, in reality, the actual monthly SaaS figure was $0.00. Many of Alchemy's SaaS relationships had not yet materialized, as customer accounts remained within the software development stages and had not yet transitioned into servicing agreements/revenue. Therefore, Timothy Li's and Constellation's representations regarding the "SaaS income" actually related to income generated from Alchemy's software development. This mischaracterization of revenue harmed BWC after the Merger, as the profit margins for software development revenue are substantially lower than SaaS profit margins. This mischaracterization substantially altered the overall outlook of Alchemy's financial state. In fact, only 2 out of 31 Alchemy clients possessed a working product in a live production state at the time of Alchemy's acquisition, resulting in Alchemy being far less profitable than advertised by Constellation and Timothy Li.

B. Timothy Li's and Constellation's mischaracterization of Alchemy's SaaS revenue caused BWC to improperly overvalue Alchemy and to offer an inaccurate and inflated purchase price for Alchemy's acquisition. SaaS revenue is a form of monthly recurring revenue, while software development revenue is non-recurring. Recurring and SaaS Revenue (also called "Enterprise Revenue") is more valuable than non-recurring revenue and an inflated Enterprise Revenue representation would cause a purchaser to overvalue a business. This is exactly what happened to BWC concerning the Merger.

C. In addition to the Pitch Deck misrepresentations, Timothy Li and Constellation also misrepresented software development revenue as SaaS Revenue in other

financial documents provided during the due diligence period, as further detailed below.

39.     **Revenue from Average Hourly Rate for Developers**: Timothy Li and Constellation represented the average hourly billable project revenue to be $150 per hour. The average hourly figure turned out to be closer to $60 per hour.

40.     **Development "Team" Misrepresentations:** Timothy Li and Constellation represented that Alchemy possessed a "Development Team" that did not actually exist. The Pitch Deck inaccurately labeled TheeCode developers (Constellation/Alchemy's software development subcontractors based in India) Khaleel Rahmann and Arun Ramesh, as Alchemy's Chief Administrative Officer ("CAO") and Chief Technology Officer ("CTO"), respectively. In reality, neither Khaleel Rahmann nor Arun Ramesh (collectively the "TheeCode Principals") were employees of Constellation, or of Alchemy. This lack of an employment relationship with the TheeCode Principals exacerbated other problematic issues between TheeCode and Alchemy post-Merger, as detailed further below.

## Term Sheet Violations.

41.     Timothy Li and Constellation violated the "Term Sheet," which outlined BWC's offer to buy Alchemy.

42.     After the Merger, BWC discovered that on April 21, 2022, Timothy Li violated both the confidentiality and exclusivity clauses by forwarding the Term Sheet to Bill Shraga of Senahill Partners, LLC. Timothy Li shared the basic structure for the proposed transaction, its compensation components and indicated that he would be shopping the offer to see if he could obtain better terms from two other potential acquiring entities. Timothy Li's actions concerning the Term Sheet further demonstrate Timothy Li's and Constellation' failure to engage with BWC in good faith at any stage in the Merger process.

43.     The agreed upon basic terms for BWC's acquisition of Alchemy from Constellation were as follows:

The following is a non-binding (except for the Exclusivity, Expenses, and

Confidentiality provisions below) term sheet (this "Term Sheet") summarizing the principal terms of the acquisition of Fluidfi Inc. dba Alchemy Technologies by Business Warrior Corp. The parties (to the Term Sheet) desire to negotiate one or more definitive purchase agreements, together with certain ancillary agreements contemplated by this Term Sheet (collectively, the "Definitive Agreements"). Based on the information known to the parties as of the date of this Term Sheet, the parties propose that the Definitive Agreements be consistent with terms and conditions set forth in this Term Sheet.

| Target | Fluidfi Inc. d/b/a Alchemy Technologies ("Fluidfi" or "Target"), a subsidiary of Constellation Fintech Holdings LLC, a Delaware Company ("Constellation") |
|---|---|
| Buyer | Business Warrior Corp ("BZWR") |
| Transaction Overview | BZWR will acquire Fluidfi into a newly formed wholly owned subsidiary (the "Transaction") in exchange for cash and a certain number of BZWR's common and preferred shares as described below. Fluidfi will continue its business under the name Alchemy as a subsidiary of BZWR and maintain its own management structure. Target and BZWR will work to structure the Definitive Agreements on a tax-advantaged basis and to satisfy intra-company debt of Target. |
| Consideration | 1. $400,000 Cash<br>2. Assumption of up to $1,600,000 in existing liabilities to be satisfied by BZWR within 14 days after closing (however, if labilities are less than $1,600,000 then difference between the actual liabilities and $1,600,000 shall be paid as additional consideration).<br>3. $5,000,000 face value of a new series of BZWR preferred stock with a 3% dividend payable in common shares of BZWR or cash at the Holder's election (the "Preferred Stock").<br><br>o The Preferred Stock will be convertible at the Holder's election into common stock based upon BZWR's then applicable market cap but not at a market cap greater than $50,000,000 (the "Valuation Cap").<br><br>o However, if the Company's trailing 180-day average market cap is more than $150 million prior to December 31, 2025 the Preferred Stock will automatically convert at the Valuation Cap.<br><br>4. $450,000 of BZWR restricted common stock to be issued to key employees as retention incentives (the "Retention Stock"). |

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

| | | |
|---|---|---|
| | | The Retention Stock will vest 50% after 12 months and 50% after 24 months of service post-transaction.<br>5. Employment Agreement with Tim Li.<br>6. BZWR will increase the Consideration by up to $500,000, in a combination of cash and stock to be determined, as the Parties may agree. This amount may be modified as a result of due diligence and balance sheet review as the parties may mutually agree.<br>7. Constellation shall have right to designate one member of the board of directors of BZWR. Such designation right shall continue until at least 2025. |
| | Timothy Li Employment Agreement | Salary of $200,000 per year with consideration for annual raises based on company performance, mutually agreed upon targets, as determined by compensation committee of BZWR.<br><br>Annual common stock bonus of $250,000-$1,000,000 per year based upon performance criteria to be mutually determined. |
| | Representations and Warranties; Indemnification | The Definitive Agreements will include customary representations and warranties by both parties and its principal shareholders, and such Transaction covenants as are customary to such a transaction. |
| | Closing Date | Upon successful completion of the Conditions To Closing, the Definitive Agreements are targeted to be executed by May 31, 2022. |
| | Conditions to Closing | The Definitive Agreements will include the following closing conditions:<br>1. The completion by each party to its satisfaction of its due diligence investigation of the other. BZWR will provide Fluidfi its due diligence list by May 2, 2022 and Fluidfi will provide responses thereto within 10 days. If responses are not received within the timeframe, the parties mutually agree to extend the exclusivity period an additional 30 days.<br>The Due Diligence will include the determination by BZWR that:<br>    a. Fluidfi can have its financial statements for the prior two fiscal years audited within 71 days following closing;<br>    b. The technology, systems and IP owned by Fluidfi is sufficient to be able to maintain and grow the business and Fluidfi has good and clear title to its IP; and<br>    c. Fluidfi can demonstrate its ability to sustain and grow revenue through its current employees, systems and processes.<br>2. The receipt by each party of approval from any third party from which it is required to seek such consent for the consummation of the Transaction.<br>3. The absence of any material adverse change to the business of either party (and any of its related businesses or subsidiaries), its business or financial condition.<br>4. The continuing accuracy of all representations and warranties made by parties (or its principal shareholders) in the Definitive Agreements.<br>5. The performance by each party of all obligations required to be performed or complied with by it prior to closing. |

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

| | |
|---|---|
| | 6. The absence of any law or court order preventing the consummation of the Transaction.<br>7. Approval of the Transaction by the Board of Directors and shareholders of each party, as applicable.<br>8. Such other conditions to closing as are customary to similar acquisitions. |
| Operations in the Ordinary Course | Pending the consummation of the Transaction, each party will conduct its business in the ordinary course consistent with past practice and use reasonable commercial efforts to maintain customers and other business relationships. FluidFi will not incur any liabilities outside the ordinary course of business, grant any employment severance rights, make any material tax or accounting method changes or enter into or modify any material contract. |
| Expenses | Each party shall bear all of its own fees and expenses in connection with the Transaction, including but not limited to audit costs, accounting/tax expenses, and finder/broker fee, legal fees, and travel expenses. Each party will be responsible for its own legal expenses in connection with the preparation and negotiation of the definitive agreement and related documents. Notwithstanding the foregoing, in the event the closing of the Transaction occurs, BZWR shall pay and/or reimburse, as applicable, the reasonable and customary costs and expenses incurred by FluidFi and Constellation in connection with the Transaction. |
| Confidentiality | The terms and conditions of this Term Sheet as well as the identification of the parties are absolutely confidential between the parties and shall not be disclosed to anyone else, except as shall be reasonably necessary to effectuate its terms as mutually agreed by the parties. |
| Exclusivity | In consideration of the parties' commitment of time and resources to enter into discussion regarding the Definitive Agreements, until June 30, 2022 (unless otherwise extended by the parties) Fluidfi shall not initiate, solicit, negotiate, accept, or discuss, directly or indirectly, any proposal or offer from any person or group of persons to acquire all or any significant part of the business and properties, capital stock or capital stock equivalents of Fluidfi, whether by merger, purchase of stock, purchase of assets, tender offer or otherwise (a "Third-Party Proposal"), or provide any non-public information to any third party in connection with a Third-Party Proposal or enter into any agreement, arrangement or understanding during the term of this Term Sheet. Immediately upon execution of this Term Sheet, Fluidfi shall terminate any and all existing discussions or negotiations with any person or group of persons regarding a Third-Party Proposal. Notwithstanding any provision in this Term Sheet to the contrary, Fluidfi may inform any person making any Third-Party Proposal that Fluidfi is currently contractually prohibited from discussing, or continuing to discuss, the Third-Party Proposal. |

44.     The Term Sheet further provided: "The information presented in this

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

1   Term Sheet is a brief outline of the possible terms to be depicted in actual Definitive
2   Agreements. This offer is for discussion purposes only and is valid for 3 business days
3   from the above date. Although the information has been discussed among the parties
4   and their agents or assigns, neither party can directly or indirectly, for themselves or
5   through any representatives, agents, employees or affiliates assume this "Term Sheet"
6   to represent a binding offer. Hence, this document is not, cannot and will not represent
7   any type of firm offer and is subject to change."

8   ## Constellation's Due Diligence was Inaccurate and Misrepresented Alchemy's Financial Condition.
9

10   45.    In addition to the due diligence provided prior to BWC's drafting and
11   presentation of the Term Sheet to Alchemy, additional due diligence documentation
12   was provided by Timothy Li and Constellation to BWC after the Term Sheet was
13   executed. BWC later discovered the due diligence provided in both instances was
14   inaccurate.

15   46.    Initial due diligence provided by Timothy Li and Constellation to BWC
16   was in the form Alchemy's pro forma financials and other documents which detailed
17   contract revenue on customer projects, as well as production timeline projections
18   which set forth the month that customer accounts would move from the development
19   stage (non-recurring revenue) to the usage stage (and therefore modify the accounts
20   from Alchemy providing software development to Alchemy providing SaaS services
21   from that point forward and commencement of receipt of recurring revenue). The
22   "contracted revenue" and "forecasts" were forwarded to BWC by email by Randy
23   Schmidt on March 25, 2022. BWC is informed and believes, and upon such
24   information and belief, alleges that Timothy Li drafted the misleading financial
25   statements on Alchemy's behalf.

26   47.    The date of any change in services provided by Alchemy to its customers
27   from development work to providing monthly SaaS was an important measuring tool
28   for BWC in assessing Alchemy's value and the approximated value of any customer

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

contract, since a customer receiving SaaS services was considerably more valuable than a customer receiving software development, a measure of the recurring versus non-recurring revenue difference between the respective type of work being performed for a customer.

48.    The SaaS services and revenue therefrom represented Alchemy's Enterprise Value and that revenue was utilized 1) as the highest proportion of BWC's assessment of Alchemy's total value and 2) the most important factor in BWC's determination of Alchemy's "CAP value" (its perceived value in the market). These figures and these valuation factors were the primary driving forces behind the determination of BWC's purchase price offer to Constellation for Alchemy.

49.    The pro forma financials were misrepresentative in the following ways: (1) Timothy Li and Constellation provided a 3-year forecast pro forma with gross inaccuracies related to the future health of the business; (2) Timothy Li and Constellation provided fraudulent information in documentation concerning the then-current SaaS revenue, production dates, projected production dates, total revenue projections and project expenses; (3) Timothy Li and Constellation inflated its revenue projections by approximately $7,000,000.00, leading to inaccurate financial projections and making BWC's valuation of Alchemy grossly overstated; and, finally, (4) Timothy Li and Constellation misled BWC concerning Alchemy's expenses, particularly those expenses relating to salaries, wages, and its costs of goods sold.

50.    After the Merger, BWC discovered that Timothy Li and Constellation hired untrained developers at rates significantly below standard market rates to support the software projects, thereby creating the impression that Alchemy operated with lower expenses and inflated profitability, than what could be evaluated from the pro forma(s). Additionally, Timothy Li represented that certain key employees worked as employees in Alchemy's information technology compliance and accounting functions. Timothy Li included the salaries and wages of these "employees" in the proforma(s). However, BWC later discovered that these Alchemy "employees" were

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

35

actually employed by Kuber and/or Max Decision Inc. ("Max D") (subsidiary companies of Constellation) and would not become part of BWC through the Merger. This left BWC without critical resources and administrative infrastructure, resulting in additional expenditures to recruit talent in an effort to remedy the understaffing at salaries that ultimately turned out to be higher than the stated salaries of the "employees" provided in the pro forma.

51.     As it relates to Alchemy's revenue, the Alchemy revenue chart listed 31 active customers. Of those 31 accounts, 1 client brought in only the revenue derived from the sale of the software IP to that client. That "IP Sale" was represented as SaaS revenue and this representation was inaccurate because there were no ongoing support services being provided. The IP sale offered no future value  and its representation as SaaS further caused for Alchemy's overvaluation by BWC. A second client labeled as in a SaaS revenue-relationship with Alchemy was a former client since 2021 which was no longer paying for any SaaS service from Alchemy. Of the 29 that remained, according to the pro forma(s), 28 of the accounts indicated movement from the software development stage to SaaS revenue before June 2022 (i.e., they would be in a SaaS revenue state by the future Merger date). This was a misrepresentation made by Timothy Li and Constellation.

52.     Shortly after the Merger, BWC discovered the 28 accounts represented as SaaS revenue actually were in the software development stage. Furthermore, the software projects remained several months away from being considered "in production," a term which identifies the point at which the SaaS revenue would commence. This misrepresentation created a previously unaccounted for operating expense, which would now burden BWC, as the development costs necessary to complete these software development projects would add several hundred thousand dollars in expenditures to each project. Constellation and Timothy Li represented Alchemy's SaaS revenue to be approximately $120,000 per month on or around March of 2022. The majority of these projects were represented as almost completed or being

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

within 30 days of completion, whereby the customer account would move into a live production state ("production"), which would initiate the monthly SaaS fees at that time and then going forward. This SaaS revenue amount was represented in due diligence documents to increase to $233,560 once all accounts were in production.

53.    After the Merger, BWC discovered that the $120,000 per month of SaaS revenue reported was already in production and billing was actually $0. Of the 28 clients, 0 were in a production state. In actuality, and as mentioned above, the only 2 customers actually in "production" did not have a SaaS services contract – these were the customers sold the software (obviating the need for servicing). These facts were not disclosed to BWC and the nature of the relationships and revenue generation for the clients was purposefully misrepresented and concealed by Constellation and Timothy Li. These acts of fraud by Constellation and Timothy Li drastically inflated Alchemy's perceived value, causing BWC to conservatively estimate the company's value to be worth around $20 million, based upon comparable marketplace findings at the time of the transaction.

54.    These 28 accounts also proved to be problematic due to undisclosed issues with Alchemy's only software developers (TheeCode and the TheeCode Principals located in India). Timothy Li and Constellation had engaged in deceptive pre-Merger business practices with the help of TheeCode, practices which eventually surfaced but only after the Merger, all as further detailed below.

55.    Once BWC obtained access to Alchemy's financial system (Quickbooks) around July 15th, 2022, BWC discovered that Alchemy had recorded $2,133,881 of total revenue from January of 2022 through May 31 of 2022. As a part of the PCAOB auditing process, BWC determined that there was $399,370 of uncollectible revenue due to inflated revenue, misrepresentations of services provided to clients, arbitrary invoices sent to clients, and TheeCode issues which were improperly included in revenue calculations. There was also an additional $300,000+ of customer credits that were applied to accounts post transaction for actions taken by Alchemy prior to the

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

transaction that were needed to preserve customer relationships. Some of the wrongful actions were contract misrepresentations, contracted deadlines that were missed, overbilled past revenue and loss of service issues. It became apparent to BWC that the customer account and revenue misrepresentations started at the beginning of the year and escalated each month in 2022. BWC could not rely on what was represented in the due diligence and forced to sort through each customer relationship and account to determine what revenue was actually agreed upon by the customer (as the contracts were not providing a complete picture), what work was committed to the be performed for the customer by Alchemy and how much additional work beyond what was originally contemplated for the Merger was required to get each customer account to a production state. There were multiple instances where BWC had to tell the clients that BWC could not honor prior Alchemy representations, resulting in customer cancellations, as well as BWC being forced to write off the associated accounts receivables balances. Specific examples are outlined in detail below.

### Timothy Li and his TheeCode Partnership and Additional Broken Promises.

56. A number of material issues pertaining to Timothy Li's relationship with TheeCode were misrepresented or were concealed by Timothy Li and Constellation.

57. Neither Timothy Li nor Constellation disclosed that, on February 14, 2022, the TheeCode Principals, Timothy Li, and Abdul Rahman formed a business entity in India known as "Alchemy Global Technologies, Inc." (hereafter "AGT"). BWC is informed and believes, and based thereon alleges, that Timothy Li made promises to his AGT co-owners concerning sharing of the rights to the source code (i.e., the IP) that TheeCode had previously assisted in developing for Alchemy (and which was transferred to BWC in the Merger), namely that AGT would engage in business utilizing the source code, among other promises. Timothy Li would later lie to Jonathan Brooks and Jason Doolittle, indicating that he had no knowledge of AGT. Timothy Li would also later attempt to dismiss AGT as a "nothing" company when confronted by Jonathan Brooks and Jason Doolittle when its existence was confirmed

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

and was undeniable by Timothy Li. Timothy Li's ownership and his misrepresentations would quickly come to harm BWC financially in a significant way.

58.     When the TheeCode Principals became aware of the Merger after seeing its press release, they vehemently objected, claiming that AGT had some ownership rights in the source code/IP. They further claimed that their consent would have been required for the source code/IP transfer to BWC under the Merger. On or around June 21, 2022, AGT leadership began engaging in threatening dialogue with Timothy Li, including threats to steal the code and shut off customer accounts. Timothy Li did not alert BWC leadership about these hostile communications and threats, or the potential for significant economic damage that these threats might cause.

59.     Following heated conversations between Timothy Li and AGT ownership, again without BWC's leadership being made aware of any issues with the source code, or of the IP transfer, as a result of the Merger, on or about June 23, 2022, someone stole Alchemy's source code/IP from Alchemy's server. AGT owners had access to Alchemy's servers due to TheeCode's (and former Alchemy personnel's) violations of security protocols (and Alchemy's own internal controls) in which Alchemy's source code was allowed to be hosted on TheeCode's local machines in India. This breach in Alchemy's technology controls, were not disclosed to BWC until AGT/TheeCode leadership contacted BWC leadership. Timothy Li had lied to BWC about AGT and the security of the source code.

60.     After this source code disagreement with TheeCode/AGT, TheeCode wrongfully took approximately 8 to 9 clients from Alchemy as an act of revenge, using the stolen source code/IP to complete the software development projects that Alchemy which was already under contract and which were part of the assets/receivables acquired by BWC in the Merger. BWC lost significant customer revenue due to TheeCode's actions. TheeCode's actions were the result of Timothy Li's fraud on his AGT "partners" and their subsequent desire to enact revenge against Timothy Li, Constellation and Alchemy (which was now owned by BWC). The revenue lost from

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

these customer accounts caused significant economic harm to BWC because Alchemy lost not only software development revenue but the expected recurring SaaS revenue when those clients' software development projects were completed.

61.   It was foreseeable from such discovery and actions taken by TheeCode as described in the immediately preceding paragraph that there would be continued issues for Alchemy with TheeCode's ownership which would follow the Merger. Timothy Li and Constellation hid facts from both TheeCode ownership (and AGT partners) and BWC relating to the Merger and the IP. BWC suffered damages as a result of TheeCode ownership's actions which could and should have been avoidable, all caused by Timothy Li's and Constellation' acts and omissions.

62.   Preceding this incident and during a 48-hour period, Timothy Li concealed information from BWC leadership about his awareness of TheeCode being unhappy the Merger. Despite being aware of TheeCode's issues with the Merger the and threats to steal the source code, Timothy Li did not notify BWC leadership about the severity of the problem and the extent to which the tension had escalated and did not take any actions to alert BWC. Instead, Timothy Li attempted to control the damage himself while continuing to conceal his ownership interest in AGT. As a result of Timothy Li's acts, BWC leadership was blindsided by TheeCode's email which was sent to BWC clients on the morning of June 23, 2022.

**BWC Discovers that Security Protocols for Source Code/IP were not Followed.**

63.   Following the Merger and after source code/IP theft, BWC further investigated Alchemy's security protocols and protection of its source code/IP. BWC discovered that prior to the Merger, Constellation and Timothy Li had not even followed its own IP security policies and had breached express warranties and representations concerning security and protection of Alchemy's assets made under the Agreement. Timothy Li was Alchemy's security officer pre-Merger and he had failed to meet his individual duties to protect the source code/IP as well.

64.   Although the source code/IP was housed in "the cloud" (i.e., in GitHub),

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

TheeCode representatives had been downloading it for some time prior to the Merger to their local machines/laptops and additionally had unfettered access to the source code/IP via the cloud at their offices in India. The source code/IP was not properly secured, and access for third parties and independent contractors (like the TheeCode developers) was not monitored or moderated, leaving the code unprotected.

65.     Timothy Li and Constellation provided to BWC a security report authored by Kirkpatrick Price (a security auditing firm) during the pre-Merger due diligence that indicated the source code/IP was properly protected; however those representations were also false. The security report was premised upon inaccurate information – including misrepresentations by Timothy Li and Alchemy/TheeCode personnel that the source code/IP was properly secured and remained entirely based within the cloud. The report made no mention of the source code/IP being stored by independent contractors on local machines within India and otherwise not secured within the cloud. The security report was therefore inaccurate due to the false information that Kilpatrick Price received from Timothy Li and Constellation on behalf of Alchemy.

66.     The failure to keep the source code/IP properly protected as represented by Timothy Li and Constellation also led to its unauthorized access, and due to tampering with the source code/IP, an essential component of software known as a "Decision Engine," which would process a customer's lending rules to prompt borrowers with tailored loan offers, was intentionally destroyed across BWC's remaining software development projects. This intentional act caused short and long-term disruption to BWC's customer relationships, adding additional expenses and causing lost revenue due to customers terminating contracts following the Decision Engine failures and malfunctions. The issues which caused relationships to fail and contract revenue to go unrealized created a corresponding cascading decrease to Alchemy revenue. The issues with the decision engine/source code/IP also cost approximately $725,000 to remedy (the "Rebuild Costs"). These costs would not have

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

1   been incurred but for Timothy Li's and Constellation's misrepresentations that the
2   source code/IP was properly secured.

3       67.    BWC did not discover the source code/IP was not properly protected until
4   after the above-stated incident took place and the damage had already occurred. BWC
5   is informed and believes, and based thereon alleges, that TheeCode and/or Timothy Li
6   intentionally tampered with the source code/IP and caused the Rebuild Costs. BWC
7   was set to discuss the issue with Timothy Li while he was still employed following the
8   Merger, but Timothy Li was terminated before the scheduled meeting date for
9   embezzling $200,000 of Alchemy's funds following the Merger, as further detailed
10  below. These IP security issues were foreseeable and avoidable but for Timothy Li's
11  and Constellation's intentional misrepresentations and concealment.

12  **Timothy Li's Transgressions while Employed**
13  **with Alchemy/BWC after the Merger.**

14      68.    As part of the Agreement, Timothy Li was to transition to direct
15  employment with BWC in an executive capacity, essentially spearheading Alchemy's
16  transition to BWC management and control, brought on to oversee Alchemy's
17  continuing success and profitability. Timothy Li created many issues for BWC during
18  his employment which are detailed in prior pleadings in this matter. For purposes of
19  these claims, it is relevant that Timothy Li essentially controlled Alchemy and its
20  operations, including the general business practices of Alchemy, its recruitment of
21  customers and price quotes for projects, asset security, finances, its labor force, and
22  pro forma financials during the negotiations for the Merger and at all prior to execution
23  of the Agreement and the effectuation of the Merger.

24      69.    BWC's issues with Timothy Li began almost immediately following the
25  Merger. The Merger was effective June 8, 2022. Timothy Li embezzled $200,000 from
26  BWC on June 18, 2022. Timothy Li also locked Alchemy accounts for Slack, Twitter
27  and Alchemy's e-mail server on July 14, 2022, threatening its operability. These events
28  followed the stolen source code/IP and decision engine failure which occurred

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-9901

1  approximately two weeks after the Merger.

2      70.    Timothy Li failed to properly disclose his ownership interests in some of Alchemy's customers and vendors. Timothy Li failed to disclose that another wholly-owned subsidiary of Constellation which was under Timothy Li's ownership and control (Max D) had a contract for services with an Alchemy customer MedPlan for $35,000 per month. Performing on this contract also required Timothy Li to perform work for Max D. Timothy Li further wrongfully directed would-be sales opportunities for Alchemy/BWC to Max D, a separate violation of his employment agreement with BWC which coincided with the Merger.

### BWC Discovers Alchemy's Financials Provided Pre-Merger were False.

71.    As described further below, BWC's financial auditors which were contracted post-Merger discovered that Timothy Li and Constellation had greatly exaggerated Alchemy's financial health and profitability. Since Timothy Li was handling virtually all matters for Alchemy, BWC is informed and believes, and based thereon alleges, all misrepresentations and concealment were, at least in some part, due to acts and omissions of Timothy Li. BWC is further informed and believes, and based thereon alleges, that Timothy Li and Constellation planned all along, based on false pretenses, to create the impression that Alchemy was much more financially healthy and more profitable than it actually was to induce its purchase by BWC at a value which was intentionally and wrongfully inflated by Timothy Li's and Constellation's acts of fraud. BWC was the victim of Timothy Li's and Constellation's premeditated plan.

72.    Financial issues began to surface following BWC's formal audit of Alchemy's financials and QuickBooks records in August and September 2022.

73.    Specifically, following the Merger, BWC commissioned a Public Company Accounting Oversight Board audit (the "Audit").

74.    The Audit, in combination with other issues arising from Timothy Li's and Constellation's concealments which began to reveal themselves as time passed

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

43

and BWC took control of Alchemy's operations, divulged that Timothy Li and Constellation had made significant misrepresentations concerning Alchemy's finances and other material matters relating to Alchemy's operations.

### Deferred Revenue Issues.

75. Alchemy, prior to the Merger and in violation of the Agreement's representations and warranties, utilized a non-GAAP accounting practice in booking its deferred revenue, i.e., its revenues which had already been received for work to be performed in the future. Alchemy booked revenue for the future without actually having received payments from customers or without even a customer agreement to the invoiced amounts. At the end of each month, Alchemy would book credits against the deferred revenue which would inflate an outsider's perspective of Alchemy's perceived revenue each month. When BWC inquired about this accounting practice, neither Alchemy's prior accountant nor Timothy Li could provide any logical reason for the practice or otherwise justify it.

### Financial Data Provided Was Materially Inaccurate and Maliciously Fabricated

76. The Audit further determined that Timothy Li and Constellation had broadly misrepresented Alchemy's financial information provided throughout the transaction. The disclosed financials represented potential future rather than existing revenues and included uncollectible monies, referred to by BWC as "bad debt."

77. Timothy Li and Constellation engaged in several tactics to misrepresent these figures as follows:

Summary of Financial Impacts – the following estimates were developed after BWC performed a PCAOB audit for July through December 2022.

- 12-month revenue projection provided in due diligence documents: $4,496,034
  - 12-month actual revenue, post transaction: $542,000
  - A negative variance of $3,954,034.
- Total SaaS Revenue Projected Per Alchemy's Provided Agreements: $5,977,000
  - Actual SaaS revenue post-Merger Transaction: $300,000
  - A negative variance of $5,677,000.

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

- Accounts Receivable Credits Allocated to Alchemy Customers post-Merger (lost revenues): $311,693
- Accounts Receivable "bad debt" write-offs post-Merger: $399,870

BWC incurred losses of approximately $10,342,597 due to these financial misrepresentations.

78.     The following information represents losses per customer account:[1]

A.     **AHP Title Holdings LLC and PreREO**: AHP Title Holdings LLC had two projects under contract with Alchemy, designated respectively as AHP Title and PreREO. Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that AHP Title Holdings LLC was under contract for $130,500 in annual SaaS recurring revenue, and forecasted 12-month development revenue of $103,480. On or about June 23, 2022, it was discovered that the source code and intellectual property of the project were stolen by TheeCode. Shortly thereafter, Timothy Li notified BWC Leadership that AHP Title Holdings and PreREO were the same company, despite representing them as separate entities. On or about July 15, 2022, BWC discovered an outstanding accounts receivable balance of $79,450. Also in July 2022, AHP Title Holdings and PreREO (AHP) terminated their relationship with Alchemy, stating that there was  no intention of a long-term agreement or relationship. The customer then began working directly with TheeCode. As a result of the accounting and representation discrepancies, BWC incurred a bad debt expense of $95,870, which BWC subsequently had to write off. Further, BWC did not receive any of the forecasted $130,500 in annual recurring revenue.

B.     **Big Start Global:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Big Start Global was under

---

[1] As to the customer accounts labeled "Anonymous" in Sections F, G, H, J and U below, because these customer accounts still maintain an ongoing business relationship with Alchemy, their names have been removed and designated as "Anonymous Customer" Nos. 1 through 5. The true and correct names of Anonymous Customers 1 through 5 will be provided to Timothy Li and Constellation in a separate document contemporaneous with the filing of this counterclaim in reply to cross-claim.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

contract for $48,000 in annual SaaS recurring revenue ($4,000/month) and $9,000 in development costs, with a start date of September 2022. On or about July 15, 2022, BWC discovered an outstanding accounts receivable balance on the account of $18,000. Upon further investigation, BWC learned that payments from Big Start Global had been made directly to Timothy Li's personal account, instead of Alchemy's corporate account. Timothy Li did not record a debt due from himself to the company for receiving the funds and he did not inform BWC that he had already collected this revenue personally. BWC operated as if the accounts receivable amount due from the customer was accurate when in fact the customer had already paid Timothy Li directly.

C. **CoreVest (CAF National LLC):** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that CoreVest (CAF National LLC) had annual SaaS revenue of $768,000 ($64,000 per month) and an additional $626,000 in 12-month non-recurring software development revenue. The representation corresponds to the CoreVest-CAF National LLC Agreement, dated April 13, 2022, which "replaces and supersedes" a previous agreement dated January 29, 2021, which is not in the files that Timothy Li and Constellation provided in the Merger. The agreement outlined $64,000 per month payments until completion of the project, with no estimated time frames for the project to be found on the initial statement of work. There were four stages of development on the project expected to last 2-3 years. On or about July 15, 2022, BWC discovered an outstanding accounts receivable on the account with a balance of $16,000. During the due diligence process, Timothy Li represented that CoreVest was a multi-year client and tied to Alchemy for no less than 3 years. However, post-Merger, CoreVest terminated their relationship with Alchemy (in June 2022), stating that they had no long-term agreement or relationship intention with Alchemy. As a result, BWC had to write off $16,000 in bad debt expense and lost all additional development revenue, ranging from $10,000 to $64,000 per month. Furthermore, none of the SaaS revenue of $768,000 per year which Timothy Li and Constellation represented in the diligence documents was realized.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

D.    **Credit Corp Financial Services:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Credit Corp Financial Services had annual SaaS revenue of $120,000, with a production start date of May 2022. The aforementioned representation corresponds to the Software Development Agreement, entered into on February 8, 2022, stipulating a 60-90 day implementation period with an estimated implementation development expense of $48,000. On or about July 15, 2022, BWC discovered an outstanding accounts receivable balance of $64,360 on the account. Post-Merger, BWC learned that Credit Corp Financial Services had only agreed to pay up to $50,000 for development, and all other revenue booked by Alchemy prior to the Merger was not agreed upon. Timothy Li and Constellation inflated Alchemy's booked revenue for this account prior to the transaction by an amount totaling $14,360, which resulted in a bad debt expense write off for $14,360. Contrary to representations made by Timothy Li and Constellation, Credit Corp was not close to being production-ready, and the customer ultimately canceled the agreement for non-performance due to issues on performance of the contract which pre-dated the Merger. This deprived BWC of the post-transaction value of the SaaS revenue reported to be contracted and almost in production and as set forth in the due diligence documents.

E.    **DocFi:** Alchemy's financials showed an accounts receivable balance of $55,320, as of April of 2022. Post-Merger, it was discovered that Timothy Li and Constellation had manipulated their financial records regarding DocFi LLC and applied non-GAAP accounting methods on the account, a violation of the Agreement. On December 31, 2021, Timothy Li and Constellation recorded a journal entry that debited bad debt expense for $55,320 and credited accounts receivable allowance for bad debt. Timothy Li and Constellation then added the accounts receivable back for April of 2022 without any reasoning or agreement from the customer. Booking the account in this fashion showed BWC an inflated accounts receivable amount and was a posting of fraudulent/non-collectible amounts that were already written off.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

F.   **Anonymous Customer No. 1:** Before the execution of the Agreement, Timothy Li and Constellation represented to BWC that Anonymous Customer No. 1 had annual SaaS revenue of $54,000 ($4,500/month), with a production date set for April 2022. The representation is in line with the Software Development Agreement dated January 13, 2022. Contrary to Timothy Li's and Constellation 's representations, monthly billing was not based on a SaaS model; rather, it depended on the number of loan applications submitted through the system. So, there should not have been any SaaS revenue represented at any time. Timothy Li and Constellation inflated Alchemy's booked revenue for this account by $76,000 pre-Merger. As of the time of filing of this Complaint, Anonymous Customer No. 1 remained in development and was nowhere near being in production. BWC has invested $190,000 in development expenses to complete this project and fulfill the terms of the Agreement, expecting to invest an additional $60,000 to do so for a total of $250,000 in costs. BWC has not received the benefit of the $54,000 in SaaS revenue, had $76,000 of uncollectible invoices, and will have invested an additional $250,000 to complete this project. Furthermore, once complete, future revenue is not predictable as there are no minimum payment requirements and $0 in SaaS revenue which is currently under contract.

G.   **Anonymous Customer No. 2:** Anonymous Customer No. 2 is a consultant that represents tribal lenders.. On or around October 2021, Li sold Anonymous Customer No. 2 a lending platform that would be "live and lending" in less than 90 days. The tribal lenders signed agreements with Alchemy in or around December 2021. Within the agreement, the Scope of Work outlines a 60-90 day timeline for the lending system to be operational. The tribal lenders were also represented in diligence documents as being live as of May 2022. In reality, the tribal lenders launched their platform some seven months later in December 2022. Because of the significant delays, BWC and Anonymous Customer No. 2 negotiated extensive discounts in order to save the relationship, resulting in BWC providing a monthly

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

development credit of $30,000 per month for the remainder of the agreement, for a total of $360,000 in discounted service revenue.

H.      **Anonymous Customer No. 3:** Before the transaction, Timothy Li and Constellation represented to BWC that Anonymous Customer No. 3 had a contracted annual SaaS revenue of $60,000 and a 12-month development forecast (post-Merger) of $36,000. The projected production date was disclosed as April 2022. The representation corresponds to the Software Development Agreement dated January 22, 2020.  The agreement is for 36-months, estimated a delivery time of 90-120 days, and set a maximum development price of $40,000.  Monthly SaaS fees range from $3,000 to $7,000 based on loan volume. Timothy Li and Constellation performed a series of misleading tactics to inflate revenue wherein, as of January 31, 2022, there was no accounts receivable balance. However, by July 15, 2022, the balance had increased to $3,000, and a credit memo of $7,000 was issued to resolve billing disputes pre-Merger. Timothy Li's and Constellation's due diligence representations and expectations did not align with the post-Merger reality. The time between the execution of the Software Development Agreement in January 2020 and the expected delivery date proved to be unacceptable, causing the customer to halt further development. Alchemy had already billed and collected amounts more than $30,000 over the maximum development price outlined in the agreement so any future development was outside of contract and would need to be negotiated, a fact not disclosed to BWC.  Additionally, the monthly SaaS fee was tied to transaction volume, so even if the project was completed, billing would not begin until the transactions actually commenced. The actual forecasted total SaaS contract value is presently $0 as a result. The project delivery date remains pending, with the client's status being "On Hold" due to the unacceptable delivery timeframe and the transaction volume-based billing structure of this deal which was only discovered post-Merger. As a result, BWC lost the anticipated benefit of the revenue of $60,000 and the total contract value of $214,000.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

I. **InProsper LLC dba Meratas:** the Software Development Agreement was executed on July 22, 2019. As of January 31, 2022, there was no accounts receivable balance, but by July 15, 2022, the balance had increased to $27,500. This customer account went live in 2019 with a monthly SaaS agreement for $5,500. However, the client discontinued the service in February 2022. Despite this termination of services, Alchemy continued to issue invoices and accrue "revenue" from February 2022 until the Merger. Although not included in the due diligence projections for contracted revenue, the ongoing monthly invoices falsely inflated Alchemy's 2022 income and accounts receivable, factors that were considered during purchase price negotiations. Post-Merger, BWC took a bad debt expense write-down of $27,500 related to this account.

J. **Anonymous Customer No. 4:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Anonymous Customer No. 4 was under contract for $24,000 in annual SaaS recurring revenue in year one, $30,000 in year two, and $90,000 in year three, with a production launch date of April 1, 2022. The representation corresponds to the Software Development Agreement of December 22, 2021, which stipulates a 36-month term, an estimated delivery time of 60-90 days, and includes a maximum development price of $40,000. On or about June 20, 2023, BWC discovered that the actual project delivery date had been significantly delayed, contrary to Alchemy's representations during due diligence. Additionally, the actual development cost had increased to $103,260, far exceeding the agreed-upon maximum of $40,000. BWC received $0 of recurring revenue in year one and has since had to offer Anonymous Customer No. 4 a discounted development rate to complete the project, estimated to cost BWC over $70,000 in development expense.

K. **LaserAway:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that LaserAway was under contract for $30,000 in annual SaaS recurring revenue ($2,500/month) with an additional $81,560 in

development income forecast for the next 12 months. The due diligence information provided showed the account as being in production and billing. On or about July, 2022, BWC discovered that LaserAway had terminated services in 2021, and all of the 2022 invoices were not agreed upon by the customer and represented phantom charges which were basically uncollectible. Despite no payments from the client since 2021, Timothy Li and Constellation reaffirmed the due diligence projections in May 2022 and included LaserAway income in the financial statements used to negotiate the transaction purchase price. BWC received no income from this account and, in fact, incurred a $30,000 loss in the form of bad debt expense and credit memos.

L.   **Level Finance/MBOCAL:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that MBOCAL, dba Level Finance and dba Level Lending was under contract for $31,500 in annual SaaS recurring revenue, with a 12-month development income forecast of $111,460. The due diligence information provided showed a production date forecast of April 1, 2022. The representation corresponds to the Software Development Agreement executed on August 10, 2020, amended on April 7, 2021. Post-Merger, it was discovered that the customer was never in production and "live" and BWC issued credits of $6,560. BWC attempted to find a resolution with the customer or to bring the customer into production.  Incidentally, BWC has been sued over this customer's account and it is alleged in the suit that the product provided while Constellation owned Alchemy was essentially valueless and required a 100% re-build by that customer.

M.   **MedPlan Credit LLC:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that MedPlan Credit LLC (hereinafter referred to as "MedPlan") was under contract for $120,000 in annual SaaS recurring revenue ($10,000/month) for 36 months, with a production and billing start date of May 2022. The representation corresponds to the Software Development Agreement of December 17, 2021, which stipulates 90-120 days of development, $10,000 in monthly SaaS upon production release, and a 36-month term. On or about

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

51

June 24, 2022, BWC discovered that there was $115,960 in unpaid development costs, which was not disclosed by Timothy Li and Constellation prior to the closing of the transaction, On or about August 25, 2021, Bob Frame, the CEO of MedPlan, informed Alchemy's former COO, Randy Schmidt that he had not agreed to pay the amounts invoiced to his account, and that due to significant production delays, Timothy Li had agreed that MedPlan did not need to make a payment until the project was in production. BWC later learned, through review of Bob Frame's communications with Li, that the total development costs were limited to $75,000, which had been surpassed prior to the Merger. Upon BWC's further investigation, it was discovered that the project would require a minimum of six additional months of development, contrary to Timothy Li's and Constellation 's representations. BWC issued credits to MedPlan totaling $163,720 for development costs that exceeded the agreed-upon $75,000 limit. BWC has also incurred a bad debt expense of $46,920.

N.   **Orchid:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Orchid/Triangular Capital Partners, LLC was under contract for $84,000 in annual SaaS recurring revenue, with a 12-month development income forecast of $103,040. The due diligence information provided showed a production date forecast of May 1, 2022. The representation corresponds to the Software Development Agreement executed on August 9, 2021. Post-Merger, BWC discovered the Orchid development environment and code-base was not secured and was subsequently stolen by TheeCode.  Orchid officially terminated its agreement with Alchemy in July 2022. The total SaaS contract value under the agreement was $256,000 and direct loss for BWC.

O.   **Orka:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to Business Warrior that Orka was under contract for $120,000 in annual recurring SaaS revenue, with a 12-month development forecast of $94,400. The due diligence information provided showed a production date forecast of May 1, 2022. This representation aligns with the Software Development Agreement

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

signed on August 16, 2021, which included a 90-120 day implementation period, $10,000 per month in SaaS fees following the production launch, and a 36-month term. Notably, the agreement also featured an option for Orka to purchase the IP for $1,000,000. However, the account did not go live in May 2022, and upon further investigation, BWC discovered that the 4-month development window had elapsed, and significant development work was still needed to launch the service. Orka had been billed $238,400 and was still months away from deployment. BWC reversed $44,000 of inflated billing, issued a credit memo for $4,000, and took a bad debt expense for $8,000. BWC did not receive the anticipated $120,000 in annual recurring revenue or the total contract value of recurring revenue of $360,000. Instead, the account resulted in a cost/loss of $56,000 for BWC. Furthermore, Li was an investor in this customer and failed to disclose the interest matter to BWC, further complicating the contractual relationship.

P. **Solar Quote:** Timothy Li was also an investor in this customer and failed to disclose the interest matter to BWC. Solar Quote was an unfinished project that pre-dated the Merger. On or around January 2023, Solar Quote would engage with BWC to seek agreeable terms to complete their software project. No terms could be reached, and the project remains unfinished.

Q. **Qashi Technology Limited:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Qashi (hereinafter referred to as "Qashi") was under contract for $18,000 in annual SaaS recurring revenue, with a production date forecast of April 1, 2022. The representation corresponds to the Software Development Agreement executed on October 19, 2021. On or about July 15, 2022, BWC discovered that there was $15,560 in accounts receivable related to Qashi. Upon further investigation, BWC determined that the project had not been launched as of the date of this complaint, contrary to Timothy Li's and Constellation's representations. BWC issued credits to Qashi totaling $4,240 and incurred a bad debt expense of $4,000. As a result of Timothy Li's and

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

1  Constellation's misrepresentations and the project's failure to launch, BWC has not
2  received the benefit of the projected $18,000 in annual recurring revenue and has
3  instead incurred only financial losses due to the credit memos and bad debt expense.

4         R.  **Rentevate:** Prior to the execution of the Agreement, Timothy Li
5  and Constellation represented to BWC that Rentevate, Inc. (hereinafter referred to as
6  "Rentevate") was under contract for $61,500 in annual SaaS recurring revenue, with a
7  production date forecast of April 1, 2022. The representation corresponds to the
8  Software Development Agreement executed on January 28, 2022, which stipulates a
9  90-120 day implementation and a 36-month term. Following the Merger, BWC
10  determined that the project had not been launched. The project was subsequently
11  canceled. Furthermore, BWC learned that beginning with March 2022 billing,
12  Rentevate informed Timothy Li that they could not pay their bills going forward due
13  to a lack of funds. However, Alchemy continued to invoice Rentevate until post-
14  merger. BWC issued credits to Rentevate totaling $18,880 and wrote off debt
15  amounting to $88,220. As a result of Timothy Li's and Constellation's
16  misrepresentations and the project's failure to launch, BWC has not received the
17  benefit of the projected $61,500 in annual recurring revenue or the total contract value
18  of recurring revenue of $301,500. Instead, BWC has incurred only financial losses due
19  to the credit memos and written-off debt.

20         S.  **SevenLake:** Prior to the execution of the Agreement, Timothy Li
21  and Constellation represented to BWC that SevenLake was under contract for $24,996
22  in annual recurring revenue, with a production date forecast of April 1, 2022. The
23  representation corresponds to the Software Development Agreement executed on
24  December 15, 2021, which was project-based and did not specify the estimated
25  delivery time or development price. Upon further investigation, BWC determined that
26  the project had not been launched contrary to Timothy Li's and Constellation's
27  representations. BWC issued credits to SevenLake totaling $20,000 and incurred a bad
28  debt expense of $5,000. Rhoda, a representative of SevenLake, attests that Timothy Li

aggressively lowered pricing to win her business and led her to believe that SevenLake owned the source code. BWC and SevenLake reached a mutual agreement in February 2023, which included reimbursement and a release of liability for both parties.

T.    **Stately Credit:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Stately Credit (hereinafter referred to as "Stately Credit") was under contract for $51,000 in annual recurring SaaS revenue, with a 12-month development forecast of $63,920 and a production date forecast of March 1, 2022. The representation corresponds to the Software Development Agreement executed on April 17, 2020, which had a 60-90 day setup period, a one-time setup fee of $25,000, and monthly SaaS fees between $3,000 and $7,000, depending on loan volume.  The term is month-to-month. Upon further investigation following the Merger, BWC determined that the project had not been launched by July 2022, and project development was discontinued. In August 2022, a previously undisclosed amendment was provided to BWC, showing that the SaaS fees for Stately Credit were only $1,000 per month, rather than the initially represented range of $3,000 to $9,000 per month based on volume. Even if the project had launched on time, the annual recurring SaaS revenue would have been $12,000 instead of the $51,000 disclosed in diligence documents. BWC issued credit memos to Stately Credit totaling $10,000. As a result of Timothy Li's and Constellation's misrepresentations and the project's failure to launch, BWC has not received the benefit of the projected $51,000 in annual recurring SaaS revenue. Instead, BWC has incurred only financial losses due to the credit memos and the undisclosed amendment that reduced the SaaS fees.

U.    **Anonymous Customer No. 5:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Anonymous Customer No. 5 was under contract for $24,000 in annual recurring SaaS revenue, with a 12-month development forecast of $13,120 and a production date forecast of March 1, 2022. The representation corresponds to the Software Development Agreement executed on November 11, 2021, which specified a 36-month term, an estimated

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-9901

delivery time of 90-120 days, and a development implementation price between $20,000 and $30,00. On or about July 15, 2022, BWC discovered that there was $6,760 in accounts receivable related to Anonymous Customer No. 5, the project was not released or close to completion, and $34,480 in development costs had already been billed to the customer. BWC issued credit memos to Anonymous Customer No. 5 totaling $19,000 and incurred a bad debt expense of $19,000. The project was eventually launched in March 2023 at a loss of $36,000 in unplanned expenses to BWC. As a result of Timothy Li's and Constellation's misrepresentations and the delays in launching the project, BWC has not yet received the full benefit of the projected $24,000 in annual recurring SaaS revenue or the total contract value of recurring revenue of $72,000. However, Anonymous Customer No. 5 remains a current client, and BWC continues to provide services under the Software Development Agreement executed in 2021.

V.     **TGUC Financial (Go Urban):** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that TGUC Financial (Go Urban) (hereinafter referred to as "TGUC Financial") was under contract for $36,000 in annual recurring SaaS revenue, with an additional $8,000 in development income forecast in the upcoming 12-month period. The production release was listed as March 2022 in the March 2022 due diligence worksheet. This representation corresponds to the Software Development Agreement executed on December 1, 2021, which stipulates a 24-month term, and a 60-120 day delivery period which was specifically forecast in the contract to be delivered in February 2022. On or about July 15, 2022, BWC discovered there was $45,400 in accounts receivable related to TGUC Financial and determined that $40,400 of the invoiced amount was inflated revenue. Contrary to Timothy Li's and Constellation's representation that the project had already launched, the project was not close to complete, and Alchemy had halted development for non-payment. BWC credited the client for the $40,400 in inflated revenue and restarted development in September 2022. Unfortunately, the client ran

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

out of funds and BWC terminated the agreement for non-payment. It was at that time that BWC learned that Timothy Li had promised TGUC Financial a "turnkey" lending solution for less than $100,000, which obviously was not delivered and was an oversell from Timothy Li to this customer.

W.    **US Credit:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that US Credit was under contract for $102,000 in annual recurring SaaS revenue, with a production date forecast of April 1, 2022. This representation corresponds to the Software Development Agreement executed on February 14, 2022, an initial term of 36-months, estimated delivery time of 60-90 days, and ongoing monthly SaaS fees as follows: $7,000 for the first 6-months, $10,000 for the subsequent 6-months, and $12,000 all following months. SaaS fees begin when the first application is processed. Contrary to Timothy Li's and Constellation's representations, the project was never launched.  BWC took a bad debt expense loss of $83,400 and has not received any of the projected $102,000 in annual recurring SaaS revenue, and will not receive the total contracted recurring SaaS revenue of $390,000.

X.    **Vital Card:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Vital Card was under contract for $48,000 in annual recurring SaaS revenue, with an additional $9,550 in projected development revenue, and a production release date forecast for March 1, 2022. This representation corresponds to the Software Development Agreement executed on September 29, 2021, with a 24-month term and the following fee schedule: 1.) Initial 3-month period: $2,500 per month, payable after the receipt of the first application.  2.) Months 4 to 6: $3,500 per month.  3.) Months 7 to 18: $5,000 per month.  4.) From the 19th month onward: $6,000 per month. Contrary to Timothy Li's and Constellation's representations, the project was never launched.  Upon information and belief, the software stopped functioning properly after TheeCode stole Alchemy's source code and changed its credentials. Vital Card subsequently terminated their agreement. BWC

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-9901

has not received any of the projected $48,000 in annual recurring revenue or the total contract value of recurring revenue of $81,000.

Y.    **Worth Technologies:** Prior to the execution of the Agreement, Timothy Li and Constellation represented to BWC that Worth Technologies Inc (hereinafter referred to as "Worth") was under contract for $102,000 in annual recurring SaaS revenue, in which in year two, annual SaaS revenue would increase to $180,000 per year. Additionally, Worth's agreement has a clause in their agreement related to "the breakup fee" of $150,000, which can be found in Section 5.3 of the Worth agreement. On or around July 1, 2022, Worth Technologies became unresponsive with BWC, despite BWC offering Worth $24,000 in credits, following the events of TheeCode. Worth ultimately became a client of TheeCode as represented by TheeCode's website. Shortly after the events of July 1, 2022, it was discovered by BWC that Worth had more than double the standard developers on the project, AGT leadership had moved other developers from projects and assigned those to Worth, for which Alchemy received no compensation or was able to bill for the additional staffing. These resource moves impacted the ability for other projects to achieve deadlines. While resource moves of this kind are not unusual, the lack of billing to Worth for these decisions and actions of Timothy Li and Constellation pre-Merger, combined with Worth's illegal use of code through TheeCode/AGT, has caused BWC substantial financial harm. BWC took a $10,000 bad debt write-off on this account as well.

**Under Constellation's Ownership, Alchemy had Engaged in Deceptive Business Practices and BWC Inherited the Customer Problems which Later Surfaced.**

79.    Following the Merger, it came to light that Timothy Li and Constellation had established deceptive business practices for Alchemy operations to increase its client base, sales figures, and revenue projections, in an effort to make Alchemy appear more profitable to would-be investors or an interested purchaser.

80.    Timothy Li and Constellation purposefully underestimated its quotes to customers for custom product development. Timothy Li knew the quotes would not

1  represent actual production costs or the required development time on projects.

2      81.    The figures presented to BWC by Timothy Li were represented as true

3  and accurate and there was no indication on paper and/or in the customers' contracts

4  reviewed in the due diligence that revenue estimates were anything but truthful and

5  accurate, with the figures further depicting reasonable development periods and future

6  SaaS revenue to follow completion of platforms developed.

7      82.    Calls to Alchemy customers during the due diligence provided BWC with

8  further verification of the contract figures. However, Timothy Li's bait and switch

9  scheme frequently entailed an initial customer quote for around $90,000 to build a

10 software platform that Timothy Li knew would actually cost $150,000 to $250,000 to

11 develop. At the time of the due diligence and up to the Merger, many customer projects

12 had not yet become overly delayed, and accounts were not yet problematic. BWC

13 inherited ticking time bombs and was left to deal with unhappy customers, write-offs

14 and customer credits to keep accounts from leaving Alchemy, all resulting in

15 significant lost revenue. The misrepresentations led to inflated profitability

16 calculations and BWC's inflated purchase offer for Alchemy, far more than it would

17 have paid had the figures been accurately presented.

18      **Workforce Representations were Purposefully Inaccurate.**

19     83.    As part of Timothy Li's and Constellation's overall plan to create the

20 impression that Alchemy was more profitable than it was, the costs of labor required

21 for projects was concealed and booked costs were not reflective of the actual labor

22 costs needed to properly complete projects. Further, Timothy Li and Constellation

23 conspired with TheeCode to hide the true costs of customer software development

24 projects, by only utilizing junior developers on projects who were not qualified for the

25 true complexity of those projects. By representing lower labor costs, development

26 projects appeared more profitable. In reality, the underqualified developers (from

27 TheeCode) created inferior products. The inferior products led to strained relations

28 with customers. Additionally, once it was discovered that the unqualified labor was

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

inadequately trained and not experienced enough to perform the already contracted work, Alchemy's labor costs significantly increased to find the appropriate workforce for completion of ongoing projects in process at the time of the Merger. The increased labor costs affected profitability projections and contributed to BWC's damages relating to its overpayment for Alchemy's purchase. The developer costs needed for the projects proved to be about 3x to 4x what TheeCode developers cost ($4 - $9/hour).

84. Timothy Li further represented to BWC pre-Merger that his relationship with TheeCode had been years in the making. The relationship was just one year old when the Parties began discussions about BWC's purchase of Alchemy.

85. Timothy Li had fired the developers previously used from AWWCOR in favor of utilizing only TheeCode developers. This change in development occurred after the date on which material changes were to be disclosed – this change was also not disclosed by Timothy Li and Constellation. The AWWCOR affiliation had created a good balance for the outsourced development team and allowed for Alchemy to have developers in Ukraine (AWWCOR) and India (TheeCode) and offered varied experience and skill sets. Moving to only TheeCode developers erased these benefits. Once the relationship with TheeCode soured (2 weeks after the Merger and following Timothy Li's broken promises to TheeCode Principals with whom he had partnered in forming AGT). Further, leading up to and following the Merger and transition of Alchemy's operations to BWC's operational control, Timothy Li instructed Alchemy legacy personnel to withhold information relating to TheeCode and the labor costs from BWC.

**Timothy Li and Constellation made Misrepresentations and Concealed Facts in its Disclosures of Material Contracts.**

86. Alchemy's security audit/consultancy/compliance services contract with Kirkpatrick was not disclosed during the due diligence period. While these would be needed services for Alchemy going forward regardless, a larger issue with the failure to disclose arose once BWC determined that the contract being paid by Alchemy was also for services which were being provided to Timothy Li's other entities (Kuber and

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

Max D). BWC should not have had to take on this undisclosed contractual burden and, on information and belief, asserts that Timothy Li and Constellation purposefully hid these details during the due diligence.

87.     An obligation for a property lease for a commercial space in Utah which was purportedly transferred to Alchemy (and therefore BWC in the Merger) had not been properly assigned. The transfer was premised on Timothy Li's and Constellation's representations that the space was used to house Alchemy personnel. That representation was false and the space was apparently empty, making Timothy Li's and Constellation's insistence that BWC assume the lease a transparent effort to shift lease obligations which were owed by Constellation and its subsidiaries, Max D and Kuber. BWC has inherited a legal wasp's nest and incurred unnecessary legal fees in this dispute.

88.     These actions of Timothy Li and Constellation evidence a concerted scheme to deceive any potential investor or purchaser of Alchemy by inflating the value of Alchemy through various misrepresentations and half-truths. BWC was a victim of Constellation's deception. BWC was inclined to give credence to Timothy Li's statements since Timothy Li was going to become a director and employee of BWC concurrently with the Merger. BWC did not foresee that Li would give cause for his termination within two weeks of the Merger by embezzling money. BWC relied on the information provided by Timothy Li and Constellation during the due diligence period and contracts lined up with pro forma figures. It was not until BWC had the professional and in-depth audit that BWC was able to discover the carefully concealed plan to inflate value utilizing a number of simultaneous revenue inflation strategies. BWC's trust in Timothy Li and Constellation's representations regarding Alchemy was misplaced and BWC suffered significant financial damages as a result.

## CAUSES OF ACTION

### First Count: Breach of Contract (Breach of the Agreement) by Constellation

89.     BWC hereby incorporates herein all Paragraphs preceding this Paragraph.

90.     Constellation owed a number of contractual obligations to BWC pursuant

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

to the Agreement, as detailed above.

91.    Constellation breached its obligations as described in detail in the Paragraphs above, including shortcomings in its representations and warranties concerning Alchemy's financials, Alchemy's debt, material adverse events which occurred before the Merger and which were under disclosure requirements, intellectual property representations (including those relating to its security), real property contracts, "material" contracts, information regarding its customers and suppliers and its security policies and procured and whether or not those policies and procedures had and were being followed.

92.    BWC has performed its obligations under the contract and has been damaged as a result of Constellation's breaches and concealments.

## Second Count: Promissory Fraud by Misrepresentation by Constellation and Timothy Li

93.    BWC hereby incorporates herein all Paragraphs preceding this Paragraph.

94.    Constellation and Timothy Li made false representations as specifically detailed in the Paragraphs above.

95.    Constellation and Timothy Li knew the representations were false at the time Constellation made the representations.

96.    Constellation and Timothy Li intended to induce BWC into the Agreement and the acquisition of Alchemy as a result of their misrepresentations.

97.    BWC justifiably relied on the misrepresentations of Constellation and Timothy Li and entered into the Agreement with Constellation to acquire Alchemy.

98.    BWC was damaged as a result of its justifiable reliance on Constellation's and Timothy Li's misrepresentations.

## Third Count: Promissory Fraud by Concealment by Constellation and Timothy Li

99.    BWC hereby incorporates herein all Paragraphs preceding this Paragraph.

100.    Constellation and Timothy Li concealed material facts as specifically

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

detailed in the Paragraphs above.

101.   Constellation and Timothy Li knew the facts concealed at the time Constellation and Timothy Li concealed them were material to the Agreement and acquisition of Alchemy.

102.   Constellation and Timothy Li intended to induce BWC into the Agreement and acquisition of Alchemy as a result of their concealments.

103.   BWC justifiably relied upon the representations of Constellation and Timothy Li and entered into the Agreement with Constellation to acquire Alchemy.

104.   BWC was damaged as a result of its justifiable reliance on the representations in which Constellation and Timothy Li concealed material facts.

### **Fourth Count: Indemnification from Constellation**

105.   BWC hereby incorporates herein all Paragraphs preceding this Paragraph.

106.   BWC entered into the Agreement with Constellation on or about June 8, 2022.

107.   The Agreement included an express indemnification provision in Article III of the Agreement, which requires Constellation to indemnify BWC for any "Losses" as defined in Article III, Section 8.2, for "(a)    any material misrepresentation or breach of warranty under Article IV . . . ." Section 8.2 defines Losses as follows:

> [A]ny and all liabilities, obligations, claims, contingencies, Taxes, fines, deficiencies, demands, assessments, losses (including diminution in value), damages (including incidental and consequential damages), costs and expenses, including, without limitation, all corrective and remedial actions, all court costs and reasonable attorneys' fees, and all reasonable amounts paid in investigation, defense, or settlement of the foregoing) (collectively, "Losses") that constitute, or arise out of or in connection with [any material misrepresentation or breach of warranty under Article IV].

The Agreement, Article III, Section 8.2.

108.   A former Alchemy customer (MBOCAL and JKP Financial DBA Level Finance, hereafter collectively referred to as "MBOCAL") has brought claims against

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901

BWC alleging breach of contract, fraud, and unfair business practices. Timothy Li and Constellation had knowledge of this potential liability to MBOCAL and/or this potential lawsuit by MBOCAL against Alchemy and did not disclose same to BWC, a violation of the Agreement

109. MBOCAL's allegations are directly related to the actions of Timothy Li and Constellation (as former owners of Alchemy) prior to the Merger.

110. Constellation's conduct contributed as a substantial factor in Alchemy and/or Constellation and/or Timothy Li causing MBOCAL's harm prior to the Merger.

111. BWC is entitled to indemnification from Constellation for any liability under MBOCAL's lawsuit against Alchemy as BWC had entered into the Agreement with Constellation in which Constellation agreed to indemnify BWC for any actions taken against BWC as a result of Alchemy and/or Constellation and/or Timothy Li's conduct prior to the Merger.

112. BWC believes additional bases for indemnification may exist or arise and BWC reserves the right to present additional indemnification claims against Constellation in this lawsuit following discovery of same.

## **PRAYER FOR RELIEF**

WHEREFORE, BWC respectfully requests that the Court enter judgment and relief against Timothy Li and Constellation, as follows:

A.   Awarding BWC all damages proximately caused by Timothy Li's and Constellation's conduct, including all compensatory damages;

B.   Awarding BWC all its costs and expenses, including attorneys 'fees;

C.   Awarding punitive damages against Timothy Li and Constellation;

D.   Indemnification against all claims brought by all parties related to Alchemy and/or Constellation and/or Timothy Li's conduct prior to the Merger; and,

E.   Granting such other and further relief as the Court may deem just and proper.

///

///

1

## **JURY TRIAL DEMANDED**

2          BWC hereby demands a jury trial with respect to the above-referenced action.

3    Dated:  August 7, 2023                    GLOBAL LEGAL LAW FIRM

4

5                                        By:  */s/ Christopher R. Dryden*
                                              Attorneys for Plaintiff/Counter-
6                                             Defendant/Counter Claimant in
                                              Reply/Cross-Defendant BUSINESS
7                                             WARRIOR CORPORATION/
                                              Counter-Claimant in Reply
8                                             BUSINESS WARRIOR
                                              CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM IN REPLY TO THE FIRST
AMENDED CROSSCLAIM

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2023, I caused to be electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail. electronic mail, or by other means permitted by the Court rules.

GLOBAL LEGAL LAW FIRM


By:  */s/ Christopher R. Dryden*
Attorneys for Plaintiff/Counter-
Defendant/Counter Claimant in
Reply/Cross-Defendant BUSINESS
WARRIOR CORPORATION/ Counter-
Claimant in Reply BUSINESS
WARRIOR CORPORATION

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-6901